STATE of Missouri, Plaintiff–
Respondent,

v.

Malik NETTLES, Defendant–Appellant.

No. 74494.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 17, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 5, 1999.

Case Transferred to Supreme Court
Nov. 23, 1999.

Case Retransferred to Court of
Appeals Feb. 22, 2000.

Original Opinion Reinstated
March 2, 2000.

Nancy L. Vincent, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

LAWRENCE E. MOONEY, Judge.

Malik Nettles ("Defendant") appeals the judgment entered on his conviction of murder in the first degree, Section 565.020 RSMo. (1994)[1]; murder in the second degree, Section 565.021; assault in the first degree, Section 565.050; and three counts of armed criminal action, Section 571.015. On appeal, Defendant argues that the trial court erred in: (1) excluding third-party confessions to these crimes; (2) overruling Defendant's Batson challenge; (3) allowing the State to introduce evidence that Defendant had previously "shot somebody over in Pagedale"; (4) allowing the State to introduce evidence of Defendant's nickname, "Homicide"; (5) refusing to allow Defendant to cross-examine a State's witness concerning a forgery charge pending against her; and (6) refusing to allow Defendant to cross-examine a police officer as to the amount of money the State paid to an informant who testified against Defendant. We affirm.

---

*1. All statutory references herein are to RSMo.*

## FACTS

The evidence at trial, which we view in the light most favorable to the verdict, *State v. Hall,* 982 S.W.2d 675, 680 (Mo. banc 1998), is as follows:

At about 7:00 a.m., on February 29, 1996, a school bus driven by Richard Lanemann ("Lanemann") sat at the corner of Blair and Desoto waiting for a passenger to arrive. Already on the bus were fifteen-year-old Kyunia Taylor ("Taylor"), who was six months pregnant at the time, Sholanda Roberson, and Lawanda Robinson, all Beaumont High School students. While the bus sat idle, a man walked up and tapped on the door. Lanemann opened the door and the man asked, "Is this the Beaumont bus?" When Lanemann answered affirmatively, the man jumped on the bus, pulled out a pistol and shot both Lanemann and Taylor. The man got off the bus and fled the scene.

Lanemann survived the shooting. Taylor and her unborn child were not as fortunate. Taylor died almost immediately from multiple gunshot wounds to her abdomen and chest. Her baby died about a month after the shooting from extensive brain damage caused by inadequate blood supply due to her mother being shot.

Shell casings recovered at the scene of the shooting matched the bullets removed from the bodies of Taylor and Lanemann. All of the casings were from .380 caliber ammunition and were abnormally swollen, indicating that they were fired from a gun that was not designed to fire .380 caliber ammunition. Experts determined that the only gun that could have fired the .380 caliber bullets and left the shells swollen as they were was a Russian or German 9-millimeter Makarov pistol. The rifling marks on the bullet were also consistent with a 9-millimeter Makarov.

On April 11, 1996, police arrested Defendant on unrelated charges and found a 9-millimeter Makarov semi-automatic pistol in his possession. The pistol was later

---

*(1994), unless otherwise noted.*

conclusively determined to be the weapon used to kill Taylor and her baby and to wound Lanemann. The two other students on the bus at the time of the shooting picked Defendant out of a line-up as the gunman.

The State's theory at trial was that a man named Mark Boyd ("Boyd") hired Defendant to kill Taylor because Boyd did not want to take responsibility for Taylor's pregnancy. In support of this theory, the State offered the following evidence:

In the fall of 1998, Taylor learned she was pregnant and suspected Boyd to be the father. When she and her mother confronted Boyd with the situation, he angrily denied responsibility. Taylor's mother told Boyd that a paternity test would be conducted once the baby was born and that she would press charges if Boyd was found to be the father. DNA testing performed on Taylor's baby after the shooting indicated that Boyd was indeed the father of Taylor's baby.

Defendant's friend, Ruth Ann Young ("Young"), testified that she saw Defendant with a gun similar to a Russian Baikal 9-millimeter semi-automatic Makarov pistol on the day before the shooting. That day, Boyd met Defendant near Defendant's home and was heard telling Defendant that he would pick him up early the next morning. Several minutes before the shooting, an eyewitness saw two men sitting in a car similar to one owned by Boyd at the corner of Blair and Desoto.

Some time prior to the shooting, Defendant's friend, Lakisha Hopson ("Hopson"), testified that she saw Boyd give the Defendant a large sum of cash. Defendant told Hopson that the money was payment toward a debt he was owed. A couple days after the shooting, Boyd was again seen giving Defendant a large sum of cash.

Hopson testified that Defendant told her he had been offered money to kill Taylor, but did not indicate who had offered him the money. He also admitted to Young that he had killed "the girl on the bus."

Based on the foregoing evidence, the jury convicted Defendant of murder in the first degree, murder in the second degree, assault in the first degree, and three counts of armed criminal action. Defendant was sentenced to life in prison without probation or parole on the first degree murder count and five life terms on the remaining counts, all terms to run consecutively. Defendant timely filed this appeal.

## ANALYSIS

### I. Third–Party Confessions

In his first point on appeal, Defendant argues that the trial court committed reversible error in excluding extrajudicial statements of two men, Michael Durley and Lonzell Wilkes, in which Durley and Wilkes' brother, Randy, were implicated in the shootings of Lanemann and Taylor. The Defendant's offer of proof on this issue included out-of-court statements by numerous individuals regarding the involvement of Durley and Wilkes in this crime. Defendant primarily challenges the exclusion of a statement to the police by Lonzell Wilkes, in which he claims to have heard both Durley and Randy discussing committing the crime on the day of the shooting and a statement by Durley to the police in which he confessed to the shootings. Defendant contends that such statements constituted admissible hearsay under *Chambers v. Mississippi*, 410 U.S. 284, 300, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), in that they exonerated him of this crime, were against the penal interest of the declarants, and were sufficiently corroborated by the evidence at trial.

Initially, we must address the State's contention that because Defendant failed to ask the court during trial to reconsider its ruling on the State's motion in limine, this claim is not preserved for our review. A trial court's grant of a motion in limine is subject to change during the course of trial and therefore preserves nothing for appellate review. *State v.*

*Purlee*, 839 S.W.2d 584, 592 (Mo. banc 1992). In order to preserve the matter for our review, the proponent of the evidence must also attempt to present the excluded evidence at trial and make an offer of proof if an objection to the proffered evidence is sustained. *Id.* Here, the transcript clearly shows that Defendant did present this issue at trial, and thus the issue has been preserved for our review.

■ The State also argues that Defendant's claim must fail because the offer of proof submitted in connection with the motion in limine contains inadmissible evidence. We agree. If part of the evidence in an offer of proof is inadmissible, the offer fails in its entirety. *State v. Raine*, 829 S.W.2d 506, 511 (Mo.App. W.D.1992). Defendant claims that the State should be estopped from making this argument as it stipulated to the admission of the exhibits. However, the record shows that the State stipulated to the exhibits' authenticity, not their admissibility. Even if Lonzell Wilkes' and Michael Durley's statements proved admissible under the *Chambers* test, Defendant's offer of proof contained numerous other items of evidence that are inadmissible under any circumstances. Thus, the entire offer of proof fails. Point denied.

## II. Batson Challenge

■ In his second point of error, Defendant contends that the trial court erred in overruling his *Batson* challenge to the prosecutor's strike of a black venireperson.

■ Parties may not use peremptory challenges against venirepersons based "solely" on their race. *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Courts employ the following three-part test in evaluating *Batson* challenges:

First, defendant raises a challenge to the state's peremptory strikes based on race or gender and identifies the cognizable group to which the venirepersons belong. The state must then provide a reasonably specific and clear, race-neutral explanation for the strike. Once the state provides an acceptable reason, the burden shifts to the defendant to show that the state's reasons are pretextual and that the strikes are actually racially motivated.

*State v. Nicklasson*, 967 S.W.2d 596, 613 (Mo. banc 1998) (citations omitted).

■ A prosecutor's explanation, if reasonably specific, clear and race-neutral, will be sufficient to uphold a strike unless discriminatory intent is inherent in the explanation. *Id.* The existence of similarly-situated white jurors is probative of pretext, but is not dispositive. *Id.* We will not reverse a trial court's decision as to whether the prosecutor discriminated in the exercise of his peremptory challenges unless that decision is clearly erroneous. *Id.*

Here, Defendant argues that the prosecutor failed to provide a sufficiently race-neutral explanation as to why he struck the black venireperson, Mr. Waters, and claims that the prosecutor's proffered reasons were pretextual as a similarly-situated white juror was not struck. The prosecutor explained that she struck Venireperson Waters because:

Mr. Waters indicated that he had an uncle who had been arrested for murder here and I believe he did say it was in the City of St. Louis. And we felt that he might have some bias against City of St. Louis police officers who would testify on behalf of the State in this case. Because of the seriousness of the particular crime with which his uncle was charged, and perhaps some residual feelings that he may have with regards to the police and with the State of Missouri, we felt he would not be a good state's juror.

There is no inherently discriminatory intent present in the given reasons, and they are thus sufficient to survive a *Batson* challenge.

Defendant next argues that the prosecutor's discriminatory intent is evidenced by

her failure to strike Katherine Gwinn, a white juror, who also had a relative that had suffered past run-ins with the law. However, the two individuals were not similarly situated. Venireperson Gwinn's brother had been convicted of a crime twenty-five years ago, whereas Venireperson Water's uncle was prosecuted only seven years ago. Thus, the situation involving Venireperson Gwinn's brother was much more remote in time. Further, Venireperson Gwinn's brother had been prosecuted in Jefferson City, not the City of St. Louis as had Venireperson Waters' uncle. Finally, Venireperson Waters' uncle had been prosecuted for murder, the crime involved in the case at bar, while Venireperson Gwinn's brother was convicted of the much less serious crime of burglary. These differences between the situations of the two individuals provide ample justification for the prosecutor's strike of one venireperson and not the other. Point denied.

### III. Evidence of Prior Bad Acts

■ In his third point on appeal, Defendant contends the trial court abused its discretion in overruling his objection to testimony that Defendant had stated he "shot somebody over in Pagedale," as this constitutes evidence of prior bad acts. However, Defendant's true complaint is that the trial court erred in denying Defendant's request for a mistrial, because the record shows that the trial court sustained Defendant's objection to the introduction of this evidence. The fact that this issue was not presented in Defendant's Point Relied On raises serious doubts as to the preservation of this issue; however, we will review the point ex gratia.

■ The declaration of a mistrial is a drastic remedy for only the most extraordinary circumstances. State v. Clemons, 946 S.W.2d 206, 217 (Mo. banc 1997). It is within the trial court's discretion to declare a mistrial, and we review only for abuse of that discretion. State v. Parker, 886 S.W.2d 908, 922 (Mo. banc 1994). We find no such abuse of discretion here. The

comment that Defendant "shot somebody over in Pagedale" was a single, isolated comment during a lengthy trial, and the prosecutor did not emphasize the comment in any way. Given the strong evidence of Defendant's guilt and the length of the trial, such an isolated comment did not warrant the drastic remedy of a mistrial. Point denied.

### IV. Evidence of Defendant's Nickname

■ Fourth, Defendant argues that the trial court abused its discretion in allowing evidence of Defendant's nickname, "Homicide," as this created an unsupported inference of guilt and implied prior bad acts of the Defendant.

■ The determination of the relevancy and admissibility of evidence is a matter within the discretion of the trial court. State v. Hutchison, 957 S.W.2d 757, 763 (Mo. banc 1997). We review allegations of erroneous admission of evidence for prejudice and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. State v. Crump, 986 S.W.2d 180, 188 (Mo.App. E.D.1999). Prejudice occurs where an error has an adverse influence on the jury. State v. Lyons, 951 S.W.2d 584, 598 (Mo. banc 1997).

First, we are not convinced that the admission of this evidence was erroneous under the circumstances of this case. Courts frequently allow witnesses to refer to a criminal defendant by his nickname, if that is the name by which the witness is familiar with the defendant or if it aids in the identification of the defendant. State v. Kidd, 990 S.W.2d 175, 185 (Mo.App. W.D.1999)(in murder prosecution, witness allowed to refer to defendant as "The Terminator"); Arnold v. Evatt, 113 F.3d 1352, 1362 (4th Cir.1997)(in murder prosecution, prosecutor allowed to refer to defendant as "Mad Dog"); United States v. Dean, 59 F.3d 1479, 1491 (5th Cir.1995)(in drug prosecution, witnesses allowed to refer to defendant as "Crazy K"); United States v. Hattaway, 740 F.2d 1419, 1425 (7th Cir.

1984)(in conspiracy, kidnapping, violation of Mann Act and unlawful use of firearms prosecution, witness allowed to refer to defendants as "Hitler," "Mad Mad Dog," "Scarface," and "Crazy Horse"); *United States v. Black*, 88 F.3d 678, 681 (8 th Cir. 1996)(in drug prosecution, witness allowed to refer to defendant as "The Jamaican"); *United States v. Delpit*, 94 F.3d 1134, 1146 (8 th Cir.1996)(in murder-for-hire and drug conspiracy prosecution, witness allowed to refer to defendant as "Monster"); *United States v. Smith*, 918 F.2d 1501, 1513 (11 th Cir.1990)(in continuing criminal enterprise prosecution, witnesses and prosecutor allowed to refer to defendant as "Boss" or "Boss Man"). Here, the trial court allowed Young to refer to Defendant as "Homicide" as this was the name by which she knew him. The prosecutor did not attempt to elicit this nickname, rather Young spontaneously referred to him as "Homicide" in response to an unrelated question.

Moreover, even if the trial court erred in admitting this evidence, Defendant has failed to make the requisite showing of prejudice which would entitle him to a new trial in that he has failed to demonstrate that the admission of such evidence resulted in the denial of a fair trial. The prosecutor never emphasized the fact that Young had mentioned Defendant's nickname. Young referred to Defendant by the nickname "Homicide" only two other times during her testimony. On most occasions, she referred to him by his first name. At no time did the prosecutor or any other witness refer to Defendant as "Homicide." Moreover, the prosecutor never argued that Defendant was guilty based on his nickname. The bare mention of Defendant's nickname a few times by one witness in a lengthy trial did not result in the type of prejudice that would require a new trial. Point denied.

### V. Cross–Examination of Witness Concerning Pending Criminal Charge

■ In his fifth point of error, Defendant claims that the trial court erred in ruling that the defense could not cross-examine witness Hopson concerning a forgery charge pending against her. The State, however, argues that Defendant failed to lay a proper foundation for the introduction of this evidence. We agree.

■ Normally, evidence of crimes for which no conviction was obtained is inadmissible to impeach a witness unless a foundation is laid that the evidence will demonstrate a possible motivation for testifying favorably to the State, for example, an expectation of leniency. *State v. McRoberts*, 837 S.W.2d 15, 21 (Mo.App. E.D. 1992).

Here, Defendant failed to lay a proper foundation for the introduction of such evidence. Defendant claims that Hopson had numerous reasons to testify favorably for the State. First, Defendant notes that the State paid Hopson $50.00 per month during the pendency of Defendant's trial. Defendant also points out that Hopson was aware of a reward available for anyone who provided information leading to the conviction of the school bus shooter. We are, however, unsure why Defendant brings these facts to our attention as he was allowed to cross-examine Hopson on such issues at trial.

Defendant also argues that the fact Hopson had a forgery charge pending against her provided motivation for her to testify in favor of the State. However, Defendant provided neither the trial court nor this court with any objective evidence as to a deal struck between Hopson and the State or as to Hopson's subjective belief that such a deal would be struck if she testified favorably for the State. Rather, Defendant relies on his own speculation that "Ms. Hopson's perception of the prosecution's power over her pending charges furnished her with a motive to lie." Such speculation and conjecture was insufficient in *State v. Harris*, 825 S.W.2d 644, 649 (Mo.App. E.D.1992) to sustain a

similar claim made by the Defendant in that case.

Defendant cites *State v. Joiner*, 823 S.W.2d 50, 53 (Mo.App. E.D.1991) for the proposition that a defendant is not required to show that a deal is pending or likely in order to demonstrate a motivation for the witness to testify favorably to the prosecutor. However, the holding in *Joiner* is limited to those cases in which the same prosecutor is pursuing charges against both the defendant and the witness. Here, Hopson was being prosecuted in St. Charles County, whereas the Circuit Attorney of the City of St. Louis prosecuted Defendant. Thus, *Joiner* is inapposite.

Point denied.

### VI. Exclusion of Evidence of Witness Being Paid Informant

In his final point of error, Defendant claims that the trial court abused its discretion in sustaining an objection to a question posed to State's witness Officer Glenn Tolias as to the amount of money the State paid one of its informants, Ruth Ann Young, for information regarding the case. However, at the time the objection was sustained, Defendant failed to make an offer of proof as to what Officer Tolias' testimony would have been on this on this issue. When an objection is sustained to proffered evidence, the offering party must show its relevancy and materiality by way of an offer of proof in order to preserve the issue for appellate review. *State v. Foulk*, 725 S.W.2d 56, 66 (Mo.App. E.D. 1987). The offer must show what evidence will be given if the witness is allowed to testify, the purpose and object of the testimony, and all facts necessary to establish its admissibility. *Id.* Here, the Defendant made no offer of proof as to what Officer Tolias' testimony would have been, and thus the point has not been preserved for our review. Point denied.

The judgment of conviction is affirmed.

PAUL J. SIMON, P.J., and KATHIANNE KNAUP CRANE, J., concur.