

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-07-00163-CR
_____

DEMETRICK CORTEZ CHRISTIAN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 36,010-A

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

Demetrick Cortez Christian[1] appeals from the denial of a motion to quash an indictment alleging he committed murder in the course of delivering a controlled substance. Section 1.03 of the Texas Penal Code states that Titles 1 through 3 of the Code apply to offenses defined by other laws. TEX. PENAL CODE ANN. § 1.03 (Vernon 2003). In his sole argument on appeal, Christian contends this Section impliedly bars the use of a violation of a drug offense in the Texas Health and Safety Code as the felony required to prove an element of murder. *See* TEX. PENAL CODE ANN. § 19.02(b)(3) (Vernon 2003) (commonly called felony murder). We disagree and affirm the trial court's decision denying the motion to quash.

I.      **FACTUAL AND PROCEDURAL HISTORY**

        A.      **A Drug Deal Gone Bad**

        Christian admitted to brokering a crack cocaine deal between dealer Brandon Mayfield and Pedro Santos. He brought the dealer to Santos' house to complete delivery of the crack cocaine. According to Christian, Santos' girlfriend, Mary Colbert, opened the door and invited the men inside. Colbert testified she was walking out of the front door on her way to work when two men wearing bandannas over their faces came up behind her with a gun and told her to step back inside.[2]

---

[1]The indictment and pleadings in his first trial (ending in mistrial) refer to Demetrick Christian, while all the pleadings in the second trial before us refer to Deme*c*trick Christian.

[2]Colbert's version of the story is corroborated by Christian's and Santos' employer, Troy Morgan.

2

According to Christian, Santos refused to pay after Mayfield delivered the crack cocaine. This led Mayfield to beat Santos over the head several times with a Glock 40, while Christian held a gun to Colbert's side to keep her at bay. During the bloody beating, which resulted in a "pool of blood" cumulating on the bathroom floor, the gun fell to the ground. Mayfield picked the gun up and cocked it. Fearing for his life, Santos struggled with Mayfield for control of the gun. Amidst the melee, Mayfield was shot, and he promptly fled Santos' home with Christian in tow.

Several Longview police officers were dispatched to the scene. They observed Santos standing on his porch in a pool of blood with a blood-soaked towel on his head. Although Santos was quickly transported to the emergency room, his brain hemorrhaged and he died as a result of the blunt-force injury.

### B. Procedural History

Christian was indicted under several counts and convicted only on the charge that he:

> did then and there intentionally or knowingly commit or attempt to commit an act clearly dangerous to human life, to-wit: beat Pedro Santos with a firearm, that caused the death of Pedro Santos, and the defendant was then and there in the course of intentionally or knowingly committing a felony, to-wit: delivery of a controlled substance, and the death of Pedro Santos was caused while the defendant was in the course of and in furtherance of the commission or attempt of said felony.

Christian filed a motion to quash this indictment, alleging that this paragraph was "defective in that it fail[ed] to state an offense under the penal code in that Title 5 of the Penal Code do[es] not apply to the Controlled Substances Act." The trial court held a hearing in which Christian's counsel referred to Section 1.03 of the Texas Penal Code and argued "the only three sections of the Penal

3

Code that incorporate other law that create felonies are in Titles 1, 2, and 3." The motion to quash was denied, and Christian was sentenced to twenty-five years' incarceration and a $5,000.00 fine.[3]

## II.    ANALYSIS

Since the sufficiency of a charging instrument presents a question of law, we review de novo a trial court's decision denying a motion to quash an indictment. *State v. Barbernell*, 257 S.W.3d 248, 251–52 (Tex. Crim. App. 2008); *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007); *Tollett v. State*, 219 S.W.3d 593, 596 (Tex. App.—Texarkana 2007, pet. ref'd).

The Texas Penal Code states a person commits an offense if he or she:

> commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt . . . he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

TEX. PENAL CODE ANN. § 19.02(b)(3) (Vernon 2003).

Christian alleges the State failed to "state a criminal offense." Although both murder and delivery of a controlled substance are felonies, Christian argues that Texas precedent and the language of Section 1.03 prohibit the application of the Texas Penal Code to the Texas Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (Vernon 2003).

The elemental principle of transferred intent is ingrained in the history of our criminal law. *Lomax v. State*, 233 S.W.3d 302, 304 (Tex. Crim. App. 2007) (deciding that felony murder statute "dispenses with culpable mental state is consistent with the historical purpose of the felony-murder

---

[3]Christian also objected to the inclusion of this indictment language in the trial court's charge.

4

rule, the very essence of which is to make a person guilty of an 'unintentional' murder when he causes another person's death during the commission of some type of a felony"). Thus, in essence, Christian argues intent to deliver cocaine cannot be transferred to satisfy the requirements of Section 19.02, i.e., there is no underlying offense. To aid our determination in this matter, we will begin by interpreting the plain meaning of the felony murder statute.

### A. The Plain Meaning of the Felony Murder Statute

If the language of a statute is clear and unambiguous, extrinsic aids and rules of statutory construction are inappropriate, and the statute should be given its common everyday meaning. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008); *Rodriguez v. State*, 953 S.W.2d 342, 353 (Tex. App.—Austin 1997, pet. ref'd). If a word is clearly and unambiguously defined by the Legislature, the definition is binding on the courts. *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 274 (Tex. 1995). "The provisions of [the Penal Code] shall be construed according to the fair import of their terms, to promote justice and effect the objectives of the code." TEX. PENAL CODE ANN. § 1.05 (Vernon 2003).

Section 19.02(b)(3) of the Texas Penal Code allows the transfer of intent of any person who "commits or attempts to commit a felony, other than manslaughter." *Threadgill v. State*, 146 S.W.3d 654, 665 (Tex. Crim. App. 2004). The definition of "felony" is "an offense so designated by law or punishable by death or confinement in a penitentiary." TEX. PENAL CODE ANN. § 1.07(a)(23) (Vernon Supp. 2008). The Code further defines "law" as including "the constitution or a statute of

5

this state or of the United States." TEX. PENAL CODE ANN. § 1.07(a)(30) (Vernon Supp. 2008).

Since the Health and Safety Code is a Texas law that designates delivery of cocaine as a felony, and

this felony is not manslaughter, the plain reading of the statute leads us to conclude delivery of a

controlled substance can be used to supply the underlying offense in a felony murder charge.

**B.      Canons of Construction**

One familiar canon firmly grounded in Texas jurisprudence is the rule of *expressio unius est*

*exclusio alterius*,[4] reasoning that a statute's inclusion of a specific limitation excludes all other

limitations of that type. *United Servs. Auto Ass'n v. Brite*, 215 S.W.3d 400, 403 (Tex. 2007); *State*

*v. Mauritz-Wells Co.*, 141 Tex. 634, 175 S.W.2d 238, 241 (1943); *Rodriguez*, 953 S.W.2d at 354

(citing *Guinn v. State*, 696 S.W.2d 436, 438 (Tex. App.—Houston [14th Dist.] 1985, pet. ref'd)).

Here, the felony murder statute exempts only manslaughter as an underlying offense. Application

of *expressio unius est exclusio alterius* suggests that all other felonies can serve as an underlying

offense.

Another canon of construction mandates the presumption that the Legislature knew of prior

court decisions before enacting or amending a statute. Cases decided before the amendments made

to the felony murder statute in 1994, and wherein petitions for discretionary review were refused by

the Texas Court of Criminal Appeals, specifically included the application of extra-penal offenses

to the felony murder rule. *Nevarez v. State*, 847 S.W.2d 637, 641, 648 (Tex. App.—El Paso 1993,

---

[4]Literal translation:  The expression of one thing is the exclusion of another.

pet. ref'd) (affirming denial of motion to quash a felony murder indictment with possession of marihuana as underlying offense); *Bryant v. State*, 793 S.W.2d 59, 60 (Tex. App.—Austin 1990, pet. ref'd) (upholding conviction based on felony murder indictment with possession of marihuana as underlying offense); *Stanford v. State*, No. 01-87-00899-CR, 1988 WL 113997, at *1–3 (Tex. App.—Houston [1st Dist.] Oct. 27, 1988, pet. ref'd) (mem. op., not designated for publication) (upholding trial court's denial of defendant's motion to quash indictment based on argument that possession and delivery of cocaine could not supply mens rea for felony murder statute). Thus, the Legislature was presumed to know Texas courts were approving the use of offenses in the Texas Health and Safety Code to supply the felony required in the felony murder statute, but did nothing in subsequent amendments which would exhibit disagreement with these holdings. *See Davis v. State*, Nos. 05-98-02108-CR, 05-98-02109-CR, 2000 WL 768632, at *4 (Tex. App.—Dallas June 15, 2000, pet. ref'd) (mem. op., not designated for publication) (discussing application of felony murder statute to drug sale).

### C. Christian's Cited Cases Are Distinguishable

Despite our holding that the plain meaning of the felony murder statute is dispositive of Christian's point of error, we must address the three cases forming the majority of his argument. In each of these cases, the defendant was charged with attempting or conspiring to commit an offense not found in the Texas Penal Code.

The first case is *Moore v. State*, 545 S.W.2d 140 (Tex. Crim. App. 1976). In *Moore*, an appeal was taken from a conviction of *attempt* to obtain a controlled substance through fraud. *Id.* at 141. Moore did not violate the Controlled Substances Act in the Texas Health and Safety Code on which the indictment was based because the statute required actual possession of the substance. In order to circumvent this obvious deficiency, the State argued that the Legislature intended for the general criminal attempt provision enumerated in Title 4 of the Texas Penal Code to apply to violations of the Controlled Substances Act. *Id.* Reasoning that Section 1.03(b) of the Texas Penal Code specifically stated only "Titles 1, 2, and 3 of this code apply to offenses defined by other laws," and aptly noting there was no law that prohibited *attempted* possession, the Texas Court of Criminal Appeals concluded that the attempt provision in Title 4 of the Penal Code was not meant to combine with the Health and Safety Code to create a new offense. *Id.* at 142. The court held the indictment did not allege an offense and, therefore, the conviction was void. *Id.*

This ruling was affirmed in *Baker v. State*, decided the following year. 547 S.W.2d 627 (Tex. Crim. App. 1977). Baker was charged with *conspiracy* to sell marihuana. *Id.* at 628. Once again, the Controlled Substances Act under which Baker was charged required an intentional or knowing delivery of marihuana. *Id.* The State argued that the Texas Penal Code's general criminal conspiracy statute contained in Title 4 could latch onto the Controlled Substances Act to create a new offense—the conspiracy to sell marihuana. *Id.* at 629. The court rejected the State's argument, employing the same reasoning as in *Moore*, and held the criminal conspiracy statute did not apply

8

to the Controlled Substances Act. *Id.* Consequently, the Texas Court of Criminal Appeals found the underlying conviction was void because the charging instrument did not allege an offense against the laws of the state. *Id.*

The last case addressed by Christian was *State v. Colyandro*, 233 S.W.3d 870 (Tex. Crim. App. 2007). John Colyandro, James Ellis, and Tom Delay were charged with conspiracy to violate certain provisions of the Texas Election Code, including conspiracy to make an unlawful political contribution. *Id.* None of the provisions of the Texas Election Code with which they were charged made mere conspiracy to violate the Code an offense. As in *Baker*, the State argued that the general criminal conspiracy statute could tag onto the Texas Election Code to create a new violation. *Id.* The Texas Court of Criminal Appeals granted review on the State's allegation that the lower court erred in holding that "the criminal conspiracy provisions of section 15.02 of the Texas Penal Code did not apply to the felony offense of making an illegal contribution under the Texas Election Code." *Id.* at 874.

In *Colyandro*, the majority reaffirmed and relied on *Baker* and *Moore*, which they stated "yielded broad implicit holdings—that the inchoate offenses contained in Title 4 do not apply to offenses defined outside the Penal Code."[5] In other words, the court was bound by the principle of *stare decisis* and held the conspiracy statute could not apply to the Election Code to create a new

---

[5]Before enactment of the Texas Penal Code, criminal statutes were scattered throughout Texas jurisprudence. When the Texas Penal Code was enacted, Titles 1 through 3, which involved general provisions and principles of criminal responsibility and punishments, were expressly applied to extra-penal offenses through Section 1.03 as a general framework for all criminal statutes.

offense. *Id.* at 874–76, 884. The majority also noted that, after *Baker* and *Moore* were decided, the Legislature amended many, but not all, extra-penal code provisions to specifically include conspiracy. Based on the rationale that the Legislature had ratified its decision in *Baker* and *Moore*, the court determined not to globally apply conspiracy to extra-penal code offenses. *Id.* at 878. The court upheld the trial court's finding that the indictment failed to allege an offense and its quashing of the "Election Code-based conspiracy charges." *Id.* at 885.[6]

In contrast with these three cases, Christian was charged with a violation of the Penal Code: murder. Murder is committed if a person:

(1)     intentionally or knowingly causes the death of an individual;

(2)     intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or

(3)     commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt , or in immediate flight from the commission or attempt he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

TEX. PENAL CODE ANN. § 19.02.

The three methods of committing murder set forth in the statute are different manner and means of committing the same offense, not distinct and separate offenses. *Gandy v. State*, 222

_____

[6]A vigorous dissent was filed by Judge Cochran and three other members of the court. Judge Price wrote a concurring opinion which indicated he agreed with Judge Cochran's reasoning, but felt bound by *stare decisis*. Judge Price further served notice that future reliance on *Moore* and *Baker* would be, "at best, unwise." *Colyandro*, 233 S.W.3d at 886.

S.W.3d 525, 529 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (citing *Aguirre v. State*, 732 S.W.2d 320, 325–26 (Tex. Crim. App. 1982) (holding that, where indictment contained two paragraphs, the first alleging murder under Section 19.02(b)(1) and the second alleging murder under Section 19.02(b)(3), the allegations were merely two different manner and means of committing the same offense)).

Christian was convicted for committing the offense of murder by the third manner and means authorized by the statute, usually referred to as the felony murder rule. Therefore, to convict Christian of murder by this manner and means, the State had to present evidence that he committed a felony. This indictment did not authorize a conviction for an offense that did not exist in law, but merely delineated the proof necessary to meet the statute's requirements for this particular manner and means of committing murder. In *Baker*, *Moore*, and *Colyandro*, each of the offenses were created and defined by incorporating provisions from Title 4 (not 1, 2, or 3) of the Penal Code into violations of the law found outside the Penal Code. Here, the offense is promulgated in a well-established provision of the Texas Penal Code, which simply sets forth the methods for proving the statute was violated. We find these cases are distinguishable.

The holding of *Colyandro*, which is binding precedent, is that "the inchoate offenses contained in Title 4 do not apply to offenses defined outside the Penal Code." *Colyandro*, 233 S.W.3d at 874–75. However, in dictum[7] the Texas Court of Criminal Appeals also stated that the

---

[7]Dicta is language in an opinion that is unnecessary to the disposition of the case. *State v. Brabson*, 976 S.W.2d 182, 186 (Tex. Crim. App. 1998). This Court is duty bound to accept the

Texas Penal Code "directs the export of the provisions contained only in Titles 1, 2, and 3" and "contemporaneously bars the import of extra-penal offenses to offenses in Titles 4 through 11 of the Penal Code." *Id.* at 884. The dissent pointed out the difficulty of this dictum.

We need not apply this dictum to our case. The *Moore, Baker* and *Colyandro* opinions all dealt with fact situations that clearly did not amount to offenses under the extra-penal code sections with which those defendants were charged. In other words, there was no such crime as conspiracy or attempt to violate the Texas Health and Safety Code or the Texas Election Code. In those cases, the State could only survive a motion to quash if it could somehow attach an attempt or conspiracy provision to a statute outside the Texas Penal Code. Basically, the courts had to deal with the issue of whether a creative indictment could create a new offense for which the Legislature did not provide.

Here, the felony offense of murder, contained in the Penal Code, was charged by the indictment. The manner and means of proving this form of murder was by the commission of a felony. This felony offense supplied the intent for felony murder as has historically been understood and applied in this State. No new offense was created in the indictment and no absurd result bars the application of the plain meaning of the statute. For this reaon, we need not venture into

---

guidance of decisions of the Texas Court of Criminal Appeals (even though they are five-four decisions) unless the language of the decision in question is only dicta and not a part of the *ratio decidendi. Dunkins v. State*, 838 S.W.2d 898, 900 n.1 (Tex. App.—Texarkana 1992, pet. ref'd).

*Colyandro*'s dictum.  Moreover, we do not think that *Colyandro*, in its limited ruling, intended to overturn Texas felony murder jurisprudence as commonly understood in the courts of this State.

## III.    CONCLUSION

We affirm the trial court's judgment denying Christian's motion to quash the indictment.

_____ Jack Carter
                                         Justice

Date Submitted:     April 2, 2009
Date Decided:       April 24, 2009

Publish

13