# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00228-CR

---

**Ex parte Adam James Edmund Demirs**

---

**FROM THE 27TH DISTRICT COURT OF BELL COUNTY**
**NO. 77,399-AA, THE HONORABLE JOHN GAUNTT, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Adam James Edmund Demirs was convicted of the state-jail-felony offense of criminal mischief and was sentenced to six months' confinement in jail; however, his sentence was suspended, and he was placed on community supervision for four years. *See* Tex. Penal Code §§ 12.35, 28.03; Tex. Code Crim. Proc. art. 42A.053. Following his conviction, Demirs appealed to this Court, and this Court affirmed the trial court's judgment. *See Demirs v. State*, No. 03-20-00084-CR, 2022 WL 221234 (Tex. App.—Austin Jan. 26, 2022, pet. ref'd) (mem. op., not designated for publication). Demirs then filed an application for writ of habeas corpus, seeking to challenge his conviction. *See* Tex. Code Crim. Proc. art. 11.072. The habeas court denied Demirs's application. Demirs appeals the habeas court's ruling. We will affirm the habeas court's order.

## BACKGROUND

In 2017, Traci Matulik heard a loud noise at the gas station that she managed. When she looked up, she saw a man later identified as Demirs swinging one of the gas nozzles

into a gas pump. She asked Demirs what he was doing, to which he replied that hitting the gas pump made him feel good. Following this encounter, Demirs returned to his truck and drove away, and Matulik wrote down his license plate number and called the police. The incident was captured by a surveillance camera.

After the incident was reported to the police, the police determined that the license plate was for a vehicle owned by Demirs. Demirs was charged with criminal mischief for intentionally or knowingly damaging or destroying property without the effective consent of the owner. *See* Tex. Penal Code § 28.03(a). The indictment alleged that the amount of pecuniary loss was more than $2,500 but less than $30,000. *See id.* § 28.03(b)(4).

Before trial, Demirs paid more than $4,000 to repair the gas pump. At trial, Matulik testified that she saw Demirs hit a gas pump with a gas nozzle. In his testimony, Demirs stated that he became frustrated when the credit-card reader did not read his credit card and spontaneously swung the nozzle at the gas pump twice, causing the reader to pop open. Although Demirs admitted that he intentionally hit the pump with the nozzle and intended to cause the damage, he also testified that he did not intend to damage the gas pump and that he recklessly caused the damage. During its closing argument, the State asserted that Demirs intentionally caused the damage and argued that he admitted that he caused the damage and intended to hit the gas pump. In his closing, Demirs argued that the State failed to prove that he intentionally or knowingly damaged the pump and that the evidence showed that he acted spontaneously without intending to damage it.

A jury convicted Demirs of the charged offense, and he elected to have the trial court assess his punishment. The trial court sentenced Demirs to six months in state jail but suspended the sentence and placed him on community supervision for four years.

2

Demirs appealed his conviction. In one of his issues, Demirs argued that the trial court erred by failing to instruct the jury that criminal mischief is a result-of-conduct offense. *Demirs*, 2022 WL 221234, at *3-5. In another issue, Demirs argued that his trial attorney provided ineffective assistance by failing to object to the lack of an instruction specifying that criminal mischief is a result-of-conduct offense and by failing to object to the State's argument that the culpable mental states applied to his conduct rather than the result of his conduct. *Id.* at *5-6.

This Court overruled all Demirs's issues. Regarding the first issue listed above, the Court quoted a portion of his argument as follows:

> The court instructed the jury that a person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct "when it is his conscious objective or desire to engage in the conduct or cause the result." It did not instruct the jury that criminal mischief is a "result of conduct" offense and that, in order to convict Demirs, the jury had to find beyond a reasonable doubt that he *intended to cause the damage* rather than intended to hit the gas pump with the nozzle.

*Id.* at *4. However, this Court noted that Demirs provided no authority for the proposition that criminal mischief is a result-of-conduct offense other than a "passing reference" to a case by the Court of Criminal Appeals reviewing "a conviction for indecency with a child." *See id.*; *see also Pizzo v. State*, 235 S.W.3d 711, 717 (Tex. Crim. App. 2007) (construing statute governing indecency with child and stating in dicta that unlike offense of indecency with child, offenses of murder, injury to child, and criminal mischief focus on result); *Aguirre-Mata v. State*, 125 S.W.3d 473, 476 (Tex. Crim. App. 2003) (explaining that dicta has no binding effect); *Christian v. State*, 286 S.W.3d 63, 69 n.7 (Tex. App.—Texarkana 2009, pet. ref'd) (explaining that "[d]icta is language in an opinion that is unnecessary to the disposition of the case" and that

appellate courts are "duty bound to accept the guidance of decisions of the Texas Court of Criminal Appeals . . . unless the language of the decision in question is only dicta").

Further, this Court set out the relevant portions of the definitions and instructions in the charge as follows:

> A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective desire to engage in the conduct or cause the result. . . . A person acts knowingly, or with knowledge, with respect to the nature of his conduct or the circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge[,] with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.
>
> . . . .
>
> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the Defendant, Adam James Edmond Demirs, on or about the 4th day of April, 2017, in the County of Bell, State of Texas, as alleged in the indictment did then and there intentionally and knowingly damage and destroy tangible property, to-wit: a gas pump, by striking it, without the effective consent of Traci Matulik, the owner of the property, and did thereby cause pecuniary loss in the amount of more than $2,500.00 and less than $30,000.00 to the owner, you will find the defendant guilty of the offense of Criminal Mischief . . . .

*Demirs*, 2022 WL 221234, at *5.

After setting out the above portion of the charge, this Court explained that the charge was consistent with the statutory definitions for the mental states for "intentionally" and "knowingly" and with the elements of the offense of criminal mischief set out in the Penal Code. *Id.* (discussing sections 6.03 and 28.03 of Penal Code). Moreover, this Court explained that where the Court of Criminal Appeals has not categorized an offense as a nature-of-conduct or result-of-conduct offense, a trial court does not err by setting out the full statutory definitions for "intentionally" and "knowingly," which includes elements regarding the nature of the offender's

4

conduct and the results of his conduct. *Id.* (discussing various cases). Because no binding determination had been made regarding whether the offense of criminal mischief "is nature based or results based," this Court concluded that the trial court did not err by including the full definitions (result and conduct) for "intentionally" and "knowingly" in the charge and overruled this issue. *Id.*

Turning to Demirs's ineffective-assistance claim, this Court noted that Demirs claimed on appeal that his trial attorney provided ineffective assistance because the attorney "did not object to the charge that failed to instruct the jury that criminal mischief is a 'result of conduct' offense and to the erroneous argument that the culpable mental states apply to the conduct rather than to the result." *Id.* However, this Court again noted that Demirs provided "no authority for the proposition that criminal mischief is a 'result of conduct' offense, nor that a jury must be so instructed." *Id.* at \*6. After observing that trial attorneys are not ineffective for failing to make futile objections or request instructions that are not required, this Court explained that it could not "conclude that counsel's decision not to request the instruction" or object to the State's closing argument "was unreasonable or otherwise deficient" and, therefore, overruled Demirs's issue on appeal. *Id.*

Following this Court's ruling, Demirs filed an application for writ of habeas corpus, asserting that his trial attorney provided ineffective assistance because his attorney "did not object to the court's charge that failed to instruct the jury that criminal mischief is a 'result of conduct' offense and to the prosecutor's erroneous closing argument that the culpable mental states apply to the conduct rather than to the result." Demirs again noted that the jury instruction contained the full definitions for "intentionally" and "knowingly" and did not "limit the definitions of the culpable mental states to the result of [his] conduct." Further, Demirs again

5

argued that his trial counsel failed to object to the State's allegedly improper argument during its closing that he was guilty because he admitted that he intended to hit the pump twice.

Demirs attached to his application an email purporting to be from his trial attorney in which his trial attorney stated, among other things, that he concluded that criminal mischief "was a conduct-intended legal issue" after researching the issue. Based on this exchange and on his assertions that criminal mischief is a result-of-conduct offense, Demirs asserted in his application that his trial attorney performed deficiently and that there was no "sound strategic reason not to object to the erroneous definitions of the culpable mental states" and "to the prosecutor's misstatement of the law to [his] detriment during closing argument." Further, Demirs argued that the deficient performance resulted in prejudice because "the jury was misled regarding the applicable law and almost certainly convicted [him] based on his testimony that he intentionally engaged in the conduct without finding that he intended to cause the result." Moreover, Demirs argued that had the jury charge properly instructed the jury and had his trial attorney objected to the State's "misstatement of the law during closing argument, there is a reasonable probability that the jury would have acquitted" him. In addition to filing his writ application, Demirs filed a motion to order his trial attorney to submit an affidavit explaining the basis for his conclusion about the type of offense criminal mischief is and explaining his decision not to object to the jury instructions and to the State's argument.

After considering Demirs's application and motion as well as the State's response, the habeas court denied the motion to order Demirs's trial counsel to submit an affidavit and denied Demirs's writ application. The habeas court also entered findings of fact and conclusions of law supporting its rulings, including the following that are relevant to the issues presented on appeal:

Findings of Fact

. . . .

23. [T]he Court finds that in this instance, [trial counsel]'s input was not necessary to conclude that his was a reasonable strategic decision not to object to the trial court's charge, because the Applicant provided no authority for the proposition that [trial counsel]'s performance was deficient.

24. Therefore, because the ground for relief that the Applicant asserts in this Petition is the same point of error that he advanced on direct appeal that was adjudicated adversely to him, the Court finds that habeas review is procedurally barred.

. . . .

27. Here, the Applicant argues that Criminal Mischief is a "result of conduct" offense and the trial court should have instructed the jury that in order to convict the Applicant, they had to find beyond a reasonable doubt that he intended to cause damage rather tha[n] intended to hit the gas pump with the nozzle.

28. However, as noted by the appellate court, the Court finds that the Applicant provides no authority that Criminal Mischief is a result of conduct offense, and where the Court of Criminal Appeals has not categorized an offense, "a trial court does not err by including the statutory definition of both intentionally and knowingly because both definitions allow the jury to consider the nature of the offender's conduct or the results of his conduct.["]

. . . .

29. The record reflects that the trial court in the Applicant's case provided the jury with the statutory definitions of both intentionally and knowingly, therefore, the Court finds that a result of conduct instruction under current law was not required, thus [trial counsel] had no legal basis to request such an instruction or make an objection.

30. The Court finds that as noted by the appellate court, "[t]rial counsel is not ineffective for failing to make futile objections or request instructions that are not required" . . . or are based on unsettled law.

. . . .

Conclusions of Law

1. The Applicant is procedurally barred from asserting his habeas claim that his trial attorney was ineffective when he failed to object to the jury charge because

7

he advanced the same ground of error on direct appeal and it was adjudicated adversely to him.

2. In the alternative, the Applicant fails to show, that given the totality of [trial counsel]'s representation, based on current law, his performance fell below an objective standard of reasonableness, or that he committed unprofessional errors hindering the Applicant's defense.

Demirs appeals the habeas court's order denying his writ application and denying his motion to have his trial counsel submit an affidavit.

## STANDARD OF REVIEW AND GOVERNING LAW

An individual convicted of a felony or misdemeanor may seek habeas "relief from an order or judgment of conviction ordering community supervision." Tex. Code Crim. Proc. art. 11.072, § 1. When a person files a writ application, he "must be, or have been, on community supervision, and the application must challenge the legal validity of . . . the conviction for which or order in which community supervision was imposed" or "the conditions of community supervision." *Id.* art. 11.072, § 2(b). When making its determination, the trial court "may order affidavits, depositions, interrogatories, or a hearing, and may rely on [its] personal recollection." *Id.* art. 11.072, § 6(b). The writ of habeas corpus is an extraordinary remedy. *See Ex parte Smith*, 444 S.W.3d 661, 666 (Tex. Crim. App. 2014). To succeed under a post-conviction writ of habeas corpus, the applicant must prove, "by a preponderance of the evidence, the facts that would entitle him to relief." *Ex parte Ali*, 368 S.W.3d 827, 830 (Tex. App.—Austin 2012, pet. ref'd).

Appellate courts review a trial court's ruling on an application for writ of habeas corpus under an abuse-of-discretion standard. *Ex parte Zantos-Cuebas*, 429 S.W.3d 83, 87 (Tex. App.—Houston [1st Dist.] 2014, no pet.). "A trial court abuses its discretion when its ruling is

8

arbitrary or unreasonable." *Gaytan v. State*, 331 S.W.3d 218, 223 (Tex. App.—Austin 2011, pet. ref'd). But a trial court does not abuse its discretion if its ruling lies within "the zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008); *see Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002). Under that standard, appellate courts review the record evidence "in the light most favorable to the trial court's ruling." *Ex parte Nelson*, 546 S.W.3d 742, 746 (Tex. App.—Houston [1st Dist.] 2018, no pet.). "[I]f the resolution of the ultimate question turns only on the application of legal standards, the appellate court reviews those determinations de novo." *Diamond v. State*, 613 S.W.3d 536, 545 (Tex. Crim. App. 2020). A determination that an applicant is procedurally barred as a matter of law from raising an issue in a writ application is a question of law that appellate courts review de novo. *Ex parte Brown*, 158 S.W.3d 449, 453 (Tex. Crim. App. 2005). Appellate courts "review de novo the trial court's resolution of mixed questions of law and fact that do not turn on witness credibility." *Ex parte Beck*, 541 S.W.3d 846, 852 (Tex. Crim. App. 2017).

## DISCUSSION

In his first issue on appeal, Demirs argues that the habeas court erred by denying his habeas application because he was denied effective assistance at trial when his trial attorney did not object to the jury charge or to the State's closing argument. In his second issue, Demirs asserts that the habeas court erred by refusing to order his trial attorney to file an affidavit as part of the habeas proceeding.

### Ineffectiveness Claim

When presenting his ineffectiveness claim, Demirs recognizes that this Court rejected his ineffective-assistance claim on direct appeal but contends that this should not bar

him from seeking habeas relief concerning his trial counsel's representation. As support, Demirs refers to cases in which appellate courts have explained that although "a claim which was previously raised and rejected on direct appeal is" generally "not cognizable on habeas corpus," that general bar "should not be applied where direct appeal cannot be expected to provide an adequate record to evaluate the claim in question" and where "the claim might be substantiated through additional evidence gathering in a habeas corpus proceeding." *See Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997). Moreover, Demirs notes that in most cases the record on direct appeal is inadequate to establish an ineffectiveness claim, in part because the record does not usually establish trial counsel's reasons for doing or failing to perform the actions forming the basis for the claim. *See id.* Further, Demirs highlights that he attached to his writ application an email from his trial counsel in which his counsel stated that he concluded that criminal mischief "was a conduct-intended legal issue" and asserts that "this new evidence makes the issue cognizable in a habeas proceeding and establishes that [his trial counsel] had no strategic reason not to object."

Although Demirs correctly points out that appellate courts have determined that some ineffectiveness claims may be made in habeas proceedings even after the issues have been resolved against the defendants on direct appeal, appellate courts have not held that all previously addressed ineffectiveness claims may be presented in subsequent habeas proceedings. On the contrary, in *Ex parte Torres*, the case principally relied on by Demirs, the Court of Criminal Appeals did determine that the habeas applicant could pursue an ineffectiveness claim, but the circumstances of that case differ significantly from those here. In that case, the Court of Criminal Appeals allowed the subsequent ineffectiveness claim because the appellate court concluded on direct appeal that there was insufficient evidence to evaluate the ineffectiveness

claim and determine whether his trial counsel was "laboring under a false impression that [applicant] could appeal the judge's denial of his request to represent himself." *Id.* at 475. Moreover, the Court of Criminal Appeals later clarified "that specific allegations of attorney performance that were rejected on direct appeal are not cognizable on habeas corpus . . . when the defendant does not offer additional evidence to support that specific claim of deficient performance in the habeas proceeding." *Ex parte Nailor*, 149 S.W.3d 125, 131-32 (Tex. Crim. App. 2004).

In the present case, this Court did not determine on direct appeal that the evidence was insufficient to determine whether Demirs's trial counsel was ineffective; rather, this Court explained that there was no binding authority supporting Demirs's assertion that criminal mischief is a result-of-conduct offense, which served as the foundation for his ineffectiveness claim; that in the absence of this type of authority, it is not error to include the full definitions for "intentionally" and "knowingly," which both have elements for a defendant's conduct and the result of his conduct; and that because there was no error stemming from the inclusion of the full definitions in the jury charge, Demirs's trial counsel did not provide ineffective assistance by failing to object to the inclusion of the full definitions in the jury charge or to the portions of the State's closing argument asserting that the culpable mental states apply to his conduct. *Demirs*, 2022 WL 221234, at \*5-6. And the email from Demirs's trial attorney stating that he concluded that criminal mischief is a conduct-oriented offense does not constitute support for the claim of deficient performance under existing law and under prevailing professional norms for the reasons articulated above. Considering the preceding, the habeas court did not err by concluding that Demirs's ineffectiveness claim was procedurally barred. *See Ex parte Nailor*, 149 S.W.3d at 131-32.

Even if Demirs's claim were not procedurally barred, we would be unable to sustain it. As support for his ineffectiveness claim, Demirs refers to the same passing reference made by the Court of Criminal Appeals in dicta that this Court determined did not provide authority for the proposition that criminal mischief is a result-oriented offense.[1] Demirs also argues that the language of the criminal-mischief statute indicates that it is a result-of-conduct offense because the focus of the portion at issue is, according to him, on the damage or destruction rather than the nature of the offense. Next, Demirs likens criminal mischief to types of assaultive offenses involving injury to an individual that have been deemed result-of-conduct offenses, *see, e.g.*, *Sneed v. State*, 803 S.W.2d 833, 835-37 (Tex. App.—Dallas 1991, pet. ref'd), and urges that "[t]here is no logical reason to treat offenses involving damage to property differently; an injury is an injury." From the preceding, Demirs asserts that the State had to prove that he intended to cause the damage resulting from his hitting the pump. Referencing the language of the email from his trial attorney, Demirs argues that his trial attorney provided ineffective assistance by failing to object to the inclusion in the jury charge of language authorizing a conviction based on the nature of the conduct and to object to the State's closing argument asserting that the jury could convict based on the evidence showing that he intended his conduct.

To demonstrate ineffective assistance of counsel, a defendant must establish by a preponderance of the evidence both deficient performance by counsel and prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Miller v. State*, 548 S.W.3d 497, 499 (Tex.

---

[1] Demirs also refers to cases from other states, but those cases are not binding authority. *See Jeffrey v. State*, 169 S.W.3d 439, 443 n.1 (Tex. App.—Texarkana 2005, pet. ref'd) (stating that Texas appellate courts are only obligated to follow decisions by higher Texas courts and United States Supreme Court).

Crim. App. 2018). First, the defendant must show that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687-88; *Ex parte Scott*, 541 S.W.3d 104, 115 (Tex. Crim. App. 2017). For claims asserting that trial counsel was ineffective for failing to object, the defendant must show that the trial court would have committed error by overruling the objection. *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996). Regarding prejudice, the defendant must show the existence of a reasonable probability that the result of the proceeding would have been different absent his counsel's deficient performance. *Strickland*, 466 U.S. at 694; *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017). A reasonable probability is one that is sufficient to undermine confidence in the outcome. *See Burch*, 541 S.W.3d at 820; *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013). "It will not suffice for [the defendant] to show 'that the errors had some conceivable effect on the outcome of the proceeding.'" *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 693). A claim of ineffective assistance must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700; *see Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

As set out above, at the time of trial, no controlling Texas authority provided that criminal mischief is a result-of-conduct offense as suggested by Demirs. "[B]asing an ineffective assistance claim on caselaw that is unsettled at the time of counsel's actions 'would be to engage in the kind of hindsight examination of effectiveness of counsel the Supreme Court

13

expressly disavowed in *Strickland.*'"  *Vaughn*, 931 S.W.2d at 567 (quoting *Ex parte Davis*, 866 S.W.2d 234, 241 (Tex. Crim. App. 1993)).  Furthermore, as explained above, in circumstances in which no binding determination has been made regarding whether a charged offense is a nature-of-conduct or a result-of-conduct offense, it is proper to include in the jury charge the full definitions for the mental states for both types of offenses.  *Demirs*, 2022 WL 221234, at *5. Accordingly, even though Demirs's trial counsel stated in an email after trial that he believed criminal mischief was a nature-of-conduct offense, we cannot conclude that the habeas court erred by concluding that Demirs failed to establish that his trial counsel's alleged failures to object fell below an objective standard of reasonableness.  *See Vaughn*, 931 S.W.2d at 567, 569 (determining that attorney was not ineffective for failing to object to argument where caselaw was unsettled as to whether overruling objection would be error); *see also Okonkwo v. State*, 398 S.W.3d 689, 701 (Tex. Crim. App. 2013) (Cochran, J., concurring) (explaining that "because the law is unsettled on this issue, appellant's counsel could not be found ineffective for failing to request a jury instruction on the statutory mistake-of-fact defense").

For these reasons, we overrule Demirs's first issue on appeal.

**Attorney Affidavit**

In his second issue on appeal, Demirs asserts that the habeas court erred by refusing to order his trial attorney to file an affidavit as part of the habeas proceeding.  As support for his issue on appeal, Demirs notes that after receiving the email from his trial attorney that was unsworn, he filed a motion requesting that the habeas court order the attorney to file an affidavit addressing what research he performed before trial that led him to conclude that criminal mischief was a nature-of-conduct offense and why he did not object to the jury

14

charge and the State's closing argument. Demirs contends that those answers would have aided the habeas court in making its determination but that the habeas court erroneously denied his motion. Accordingly, Demirs argues that this Court should reverse the habeas court's rulings, remand the case, and order the habeas court to compel his attorney to file an affidavit answering his questions.

As part of a habeas proceeding under article 11.072, a habeas court may, among other options, order that affidavits be prepared and filed before ruling on the habeas application. *See* Tex. Code Crim. Proc. art. 11.072, § 6(b). However, although article 11.072 authorizes habeas courts to order affidavits, "it does not *require* that the [habeas] court do so." *Ex parte Cummins*, 169 S.W.3d 752, 757 (Tex. App.—Fort Worth 2005, no pet.). Instead, article 11.072 provides habeas courts with "the discretion to determine what is necessary to make its determination." *See Ex parte Garza*, No. 13-10-00391-CR, 2012 WL 914939, at *2 (Tex. App.—Corpus Christi–Edinburg Mar. 15, 2012, no pet.) (mem. op., not designated for publication); *see also Gaytan*, 331 S.W.3d at 223 (setting out when court abuses its discretion).

As pointed out by the State in its response to Demirs's motion requesting an affidavit, the habeas court was informed that this Court addressed the ineffectiveness claim and determined that it was not error to include the nature-of-conduct language in the charge and that, therefore, Demirs's trial counsel was not ineffective for failing to object to that portion of the charge or to the State's closing argument pertaining to his intent to engage in the conduct at issue. *See Demirs*, 2022 WL 221234, at *5-6. In light of that determination, the habeas court could have reasonably determined that it was unnecessary to order trial counsel to submit an affidavit explaining why he believed criminal mischief is a nature-of-conduct offense and why he failed to make the objections framing the ineffectiveness claim.

For these reasons, we conclude that the habeas court did not abuse its discretion by denying Demirs's motion seeking to compel his trial counsel to submit an affidavit and, therefore, overrule his second issue on appeal.

## CONCLUSION

Having overruled Demirs's issues on appeal, we affirm the habeas court's order denying his application for writ of habeas corpus.

_____

Thomas J. Baker, Justice

Before Justices Baker, Triana, and Smith

Affirmed

Filed:   September 22, 2023

Do Not Publish