02-08-304-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-08-00304-CR

 

 


 
 
 Bradley Kelton Crenshaw
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM County
Criminal Court No. 4 OF Tarrant
COUNTY

----------

MEMORANDUM
OPINION[1]

----------

This
case raises certain issues fundamental to our system of criminal justice,
especially those issues involved in substantial justice and fair play.  In a
system in which the indictment or information is to provide notice to a
defendant of the charges against which he must defend himself and there is no
ability to request a bill of particulars, and in which the definition of
intoxication has been held to be evidentiary only and not an element of the
offense, can the State in fundamental fairness plead only the subjective
definition of intoxication in two different paragraphs, alleging both
consumption of alcohol alone and consumption of alcohol and/or drugs, offer
flawed evidence of per se intoxication by retrograde extrapolation, and then
properly obtain an instruction to the jury that the definition of intoxication
includes the per se definition?  We hold that the State may not.

A
jury convicted Appellant Bradley Kelton Crenshaw of driving while intoxicated
(DWI).  The trial court sentenced him to 120 days’ confinement and an $850
fine, probated for twenty-four months.  In his sole issue, Appellant challenges
the trial court’s jury charge, which instructed the jury on both the subjective
definition and the per se definition of intoxication despite the information
having alleged only the subjective definition.  Because we hold that Appellant
suffered some harm from the trial court’s erroneously instructing the jury on
the per se definition, we reverse the trial court’s judgment and remand this
case to the trial court for a new trial.

I.  Factual
and Procedural Background

In
two paragraphs, Appellant was charged by information with “operat[ing] a motor
vehicle in a public place while [he] was intoxicated by not having the normal
use of his mental or physical faculties by reason of the introduction” of (1) alcohol,
or (2) “alcohol, a controlled substance, a drug, a dangerous drug, or a
combination of two or more of these substances into his body.”

At
trial, in anticipation of the State’s introduction of his blood test results
and extrapolation testimony, Appellant objected under rules 401 and 402 that
the evidence would be confusing to the jury and that it was not relevant to
whether he had had the normal use of his faculties at the time of the alleged
offense.  The trial court overruled the objection, and Appellant requested and
was granted a running objection.

Southlake
police officer Andrew Anderson testified that at about 2:00 a.m. on February
19, 2007, he arrested Appellant for DWI and that he took Appellant to the
hospital for a blood draw at about 4:00 a.m.  Anderson further testified that
when he asked Appellant if he had been drinking, Appellant stated that he had
had bourbon and Coke at 1:00 a.m.

Officer
Anderson also testified that he smelled marijuana “on [Appellant’s] breath” and
that he found a leaf of marijuana on the console between Appellant and the
passenger.  Was he testifying that Appellant was eating marijuana a la Alice B.
Toklas?[2] 
Officer Anderson made no mention of smelling marijuana smoke in the car, on
Appellant’s clothing, or in his hair.  Officer Anderson made no mention of
finding any joint, roach, ashes, or other indication that marijuana had been
smoked.  He arrested the passenger for public intoxication.  Although Appellant’s
blood was drawn and tested for alcohol, no blood test was performed for the
presence of marijuana.  There was no evidence of how much marijuana, if any,
Appellant “indulged in the use of,” and no evidence of any other controlled
substance, drug, or dangerous drug in Appellant’s system.

Andrew
Macey, a forensic scientist with the Texas Department of Public Safety,
testified that the blood sample taken from Appellant approximately two hours
after his stop contained .07 grams of alcohol per 100 milliliters of blood. 
Angela Caretta Springfield, chief toxicologist for the Tarrant County Medical Examiner,
testified that under Texas law, .08 is legal intoxication.  She further
testified that if a person is 6'1" and 140 pounds, has had “one or two
bourbon and Cokes,” is stopped by the police at 2:06 a.m., and had a blood draw
at 4:01 a.m., if the blood test showed a blood alcohol concentration (BAC) of
.07, then at the time of his driving, the person would have had a BAC of at
least .08.

During
the charge conference, the State objected to the proposed definition of
intoxication, which did not state that a person was intoxicated if he had an
alcohol concentration of .08 or more.  Citing State v. Barbernell,[3]
the State argued that to give notice to Appellant, it only needed to plead
intoxication in the information.  The State argued that the information
required no other references as to an objective or subjective standard and that
“[e]verything after that is icing on the cake.”  The State requested the trial
court to provide a definition in the charge that tracked the language of the
information and also included the .08 per se intoxication standard.

Appellant
asserted that the State went beyond the mere plea of intoxication in the
information and alleged loss of normal use of mental and physical faculties. 
He argued that the inclusion of the subjective standard in the information
limited his notice, that he relied on the notice in preparation of his defense,
that the addition of the per se definition in the jury charge would be
prejudicial, and that the jury charge should track the language of the
information.  The trial court included the per se definition in the jury charge
but did not include it in the application paragraph.

Specifically,
over objection, the trial court instructed the jury that

“Intoxicated” means:

A.  Not having the
normal use of mental or physical faculties by reason of the introduction of
alcohol, a controlled substance, a drug, a dangerous drug, or a combination of
two or more of these substances into the body; or

B.  Having an alcohol
concentration of 0.08 or more.

The
trial court also instructed the jury, without objection, that

You
are further instructed that if a defendant indulges in the use of Marijuana to
such an extent that he thereby makes himself more susceptible to the influence
of alcohol than he otherwise would have been, and by reason thereof becomes
intoxicated from recent use of alcohol, he would be in the same position as
though his intoxication was produced by the use of alcohol alone.

The
application paragraph permitted the jury to convict Appellant of DWI if they
found beyond a reasonable doubt that he

did not have the
normal use of his mental or physical faculties by reason of the introduction of
alcohol into his body, and while so intoxicated, by reason of the introduction
of alcohol into his body, either alone or by introduction of alcohol, a
controlled substance, a drug, a dangerous drug, or a combination of two or more
of these substances into the body, and on the said date did then and there
drive or operate a motor vehicle in a public place while intoxicated.

II. 
Charge Error

In
his sole issue, Appellant complains that the jury charge erroneously instructed
the jury to convict him based on either the “subjective” definition of
intoxication or the “per se” definition despite the State’s sole reliance on
the subjective allegation in the information.  After this case was submitted,
this court requested briefing of the following subsidiary but pertinent
matters:[4]

·       
Whether
an indictment that alleges intoxication by lack of normal use but that does not
allege per se intoxication constitutes notice to a defendant that the State
will not seek to convict on a theory of per se intoxication;

·       
Whether
a claim of lack of notice of prosecution on a per se theory of intoxication
requires a motion for continuance or some other request for additional time to
secure an expert in order to preserve the notice claim or whether the objection
to the admission of the evidence sufficiently preserves the claim;

·       
Whether
the reasoning of the court in Cook v. State,[5] in holding that definitions in
a jury charge must be limited to the conduct elements, applies in this case;

·       
Whether
the objected-to testimony regarding retrograde extrapolation complained of in
Appellant=s brief was properly
admitted under the Daubert-Kelly standard and, if not, whether its
admission was reversible error in light of the jury instruction;

·       
If
the testimony of retrograde extrapolation was improperly admitted and if there is
no properly admitted evidence of per se intoxication, whether it was error to
include per se intoxication in the definition of intoxication submitted to the
jury;

·       
Whether
there was sufficient evidence of the amount of marijuana in Appellant=s system and the
effect of that amount of marijuana to support the synergistic effect
instruction and whether the instruction was sufficient to properly guide the
jury in applying the instruction, or whether the evidence of the extent to
which Appellant Aindulge[d] in the use
of marijuana@ and of the effect of
that amount of marijuana was inadequate so that the instruction was not
supported by the evidence or, in light of the evidence, was confusing to the
jury; and

·          
Whether
it was error to submit to the jury the application paragraph allowing the jury
to convict if it found Appellant was intoxicated as a result of the
introduction of a drug or a dangerous drug when there was no evidence of the
introduction of a drug or a dangerous drug; if it was not error to submit the
application paragraph, why was it not error; if it was error, whether the
objection to the charge included an objection to that application paragraph; 
and if it was error, whether such error was harmless, merely somewhat harmful,
or egregiously harmful.

Appellate
review of error in a jury charge involves a two-step process.[6]  Initially, we must determine
whether error occurred.[7]

In Barbernell,
the Texas Court of Criminal Appeals held that an information alleging neither
definition of intoxication nevertheless provided Barbernell with adequate
notice of the charges against him,[8] but that is not the
situation here.  The State here conscientiously elected to narrow its case by relying
solely on the subjective definition in the information but at trial sought and
obtained (over timely objection) the benefit of both the subjective and per se definitions
in the charge.  Because the information did not allege the “per se” theory of
intoxication, there was no notice to Appellant of any intent to offer expert
evidence of retrograde extrapolation and no opportunity for Appellant to secure
an expert to rebut the information.  Additionally, although the manner in which
a defendant becomes intoxicated is evidentiary,[9] when the State pleads two
of three methods of proving intoxication, analogizing to the “familiar canon
firmly grounded in Texas jurisprudence . . . the rule of expressio
unius est exclusio alterius, reasoning that . . . inclusion
of a specific limitation excludes all other limitations of that type,”[10] essentially, the
State is informing a defendant that it will not seek to prove intoxication by
the third means.  This conclusion is particularly important when the excluded
method requires expert testimony, and, therefore, to effectively meet and
dispute the evidence of the State’s expert, a defendant must rely on the
assistance of an expert and give timely notice of intent to call the expert in
order adequately to prepare for trial.[11]

The
State can prove intoxication by proving per se intoxication or by proving lack
of normal use of mental or physical faculties,[12] both evidentiary matters
and not elements of the offense and therefore not required to be pled.[13] 
But when the State gives specific notice that it will prove one form of
intoxication and not the other, the State may be bound by the allegations in
the same way that it would be bound if it had provided the same information in
response to a discovery request, if to hold otherwise would encourage
gamesmanship and trial by ambush.[14]  Consequently, we hold
that because the information specifically gave Appellant notice that the State
would prove intoxication by proving lack of normal use of his mental and
physical faculties, the information failed to provide adequate notice to
Appellant that the State would prove per se intoxication.  Additionally,
because the information specifically gave notice of the State’s intent to prove
intoxication by lack of normal use of his mental and physical faculties, we
hold that Appellant was effectively denied notice of the charges ultimately
leveled against him in the jury charge, and, correspondingly, that the jury
charge erroneously expanded the scope of the charges against him by
incorporating the per se definition of intoxication.[15]

We
further hold that the trial court erred by including the per se definition
because the evidence does not support such inclusion.  In Cook, the
Texas Court of Criminal Appeals held that “it is error for a trial judge to not
limit the definitions of the culpable mental states as they relate to the conduct
elements involved in the particular offense.”[16]
 Applying that rule here, we would hold that it is error for a trial judge to
not limit the definitions of intoxication to the facts before the court.  But
we do not need to so tax ourselves, because, as the Texas Court of Criminal
Appeals has explained since Barbernell,

Under
the Texas DWI statute, intoxication may be proven in either of two ways: (1)
loss of normal use of mental or physical faculties or (2) alcohol concentration
in the blood, breath, or urine of 0.08 or more.  The first definition is the
“impairment” theory, while the second is the “per se” theory.  They are not
mutually exclusive, and, as long as there is evidence that would support
both definitions, both theories are submitted in the jury charge.[17]

In Mata,
the Texas Court of Criminal Appeals explained, “Retrograde extrapolation is the
computation back in time of the blood-alcohol level—that is, the estimation of
the level at the time of driving based on a test result from some later time.”[18] 
The court noted that a particular absorption rate depends on a variety of
factors, including, inter alia, food in the stomach, gender, weight,
age, amount consumed, and period of consumption.[19]  The Texas Court of Criminal
Appeals also noted that the scientific community is divided over whether
retrograde extrapolation is reliable.[20]

In
the case now before this court, Dr. Springfield offered testimony of retrograde
extrapolation over objection, yet lacked vital information necessary to an
accurate extrapolation result:  the period of consumption, whether food was in
the stomach, and an accurate assessment of the amount consumed.

Dr.
Springfield opined that at the time Appellant was driving, his BAC alcohol
level was above .08.  Yet Dr. Springfield also candidly admitted that, rather
than being “widely accepted in the scientific community,” extrapolation is the
subject of controversy in the scientific community.  She testified that “[o]ne
has to have certain information available in order to make a reliable
extrapolation.  Otherwise, there are too many assumptions that are made.  It
may not be credible in a particular instance that’s being considered.”

Dr.
Springfield was then given certain assumptions, and her response to certain
assumptions was that the BAC was at .08 or below.  When given other
assumptions, she concluded that the BAC would definitely be greater than .08.

She
also testified that, although in her opinion a person began losing normal use
of mental or physical faculties at a BAC of .04, “when someone has a .10
alcohol level in their body,” he or she would not necessarily show signs of
intoxication.  Dr. Springfield also testified that such a person would appear
intoxicated to only 50% of people observing them.  Does this mean that the
observed person has or has not lost the normal use of his or her mental or
physical faculties?

Additionally,
as in Mata, the State did not offer evidence of the reliability of Dr.
Springfield’s retrograde extrapolation testimony that Appellant’s BAC was .08
at the time he was operating the motor vehicle and did not dispute her
testimony that under another set of assumptions, it was below .08.  Indeed, Dr.
Springfield did not testify that the reliability of extrapolation was widely
accepted in the scientific community.  She testified that extrapolation was not
widely accepted in the scientific community, was controversial, and was
reliable only if certain information, which she did not have, was available. 
Her conclusion that Appellant’s BAC was .08 or above was dependent on
speculative assumptions provided to her and not on actual evidence.

When
asked if she could use the evidence contained in the record (time of driving,
time of blood draw, and a BAC result of .07) to “figure out what the alcohol
concentration was at the time of driving,” Dr. Springfield replied, “Yes. 
There are some ways of doing that, but . . . I would need other
information.”  The State then provided various hypothetical situations that Dr.
Springfield testified would definitely result in a BAC of above .08.

Although
Dr. Springfield testified that she could state unequivocally that a person who
was 6'1", weighed 140 pounds, had had his last drink at 1:00 a.m., and had
stated that he had one or two bourbon and Cokes would have had a BAC of above
.07 before the police stopped him at 2:06 a.m. if that person also registered a
.07 BAC at 4:01 a.m., she also testified to the contrary.  “When I say that it
would take three to four drinks of that kind to reach a .07, I’m saying if you
could take the alcohol and put it directly into somebody’s bloodstream . . . .” 
[Emphasis added.]

Then
the defense added consumption of food to the hypothetical situations posited
originally by the State:

Q:      .
. . [I]f someone had—over a three-hour period had a bourbon and Coke in the
first hour, ate dinner, and then had another bourbon and Coke?  Would that
change how you—

A:      Yes.

          . . . .

A:      Well,
if you made a measurement two hours later, the alcohol would be virtually zero.

In
discussing the controversy about extrapolation, Dr. Springfield stated, “Um,
there is controversy about [extrapolation].  One has to have certain
information available in order to make a reliable extrapolation.  Otherwise,
there are too many assumptions that are made.  It may not be credible in a particular
instance that’s being considered.”  She then assumed that she had all the
information, but she testified that the results were affected by food
absorption and elimination, information that the record does not reflect that she
had.  Nor did she know the amount of alcohol content in any drink that Appellant
consumed.  We therefore hold that the trial court additionally erred by
including the “per se” theory of intoxication in the definition of intoxication
provided in the jury charge because there was no properly admitted evidence of
it under the requirements of Daubert and Kelly.[21]

III. 
Harm

Error
in the charge, if timely objected to in the trial court, as this error was,  requires
reversal if the error was “calculated to injure the rights of [the] defendant,”
which means no more than that there must be some harm to the accused
from the error.[22] 
In other words, a properly preserved error will require reversal as long as the
error is not harmless.[23] 
In making this determination, “the actual degree of harm must be assayed in
light of the entire jury charge, the state of the evidence, including the
contested issues and weight of probative evidence, the argument of counsel and
any other relevant information revealed by the record of the trial as a whole.”[24] 

The
evidence of guilt was conflicting.  The videotape of the arrest contradicted
some of Officer Anderson’s written statements in his report.  Appellant did not
stumble, and his speech was not slurred.  Although acting nervous has been held
to contribute to reasonable suspicion to detain a person,[25]
here, Officer Anderson testified that Appellant was not nervous, and Officer
Anderson believed that the absence of nervousness was a suspicious
circumstance.

The
videotape does not reveal whether Appellant was intoxicated at the time he
operated a motor vehicle, nor does it reveal that Appellant was intoxicated at
the time the videotape was made.

Further,
the rest of the jury charge is problematic.[26]  The trial court
improperly instructed the jury on how it was to consider evidence of
marijuana.  Although Officer Anderson found a marijuana leaf and said that he
smelled marijuana on Appellant’s breath, no blood test was conducted to
determine whether there was any marijuana in Appellant’s blood stream or, if
so, how much.  Further, there was no evidence that the amount of marijuana in
Appellant’s system, if any, would have a certain or, indeed, any effect on the
action of alcohol in Appellant’s system.  “Texas courts are forbidden from
instructing the jury on any presumption or evidentiary-sufficiency rule that
does not have a statutory basis.  Such an instruction is an improper comment on
the weight of the evidence.”[27]

Additionally,
the application paragraph improperly allowed the jury to convict if they found that
Appellant was intoxicated as a result of the introduction of alcohol, a
controlled substance, a drug, a dangerous drug, or a combination of two or more
of these substances.  There was no evidence from any source of the presence of
any drug or dangerous drug in Appellant’s system at the time he drove or at any
time after he was detained.  There was, therefore, no evidence to support that
instruction or to support a conviction on that basis.[28] 
When the evidence is insufficient to support a conviction, the trial court
should eliminate that theory of conviction from the jury’s consideration and
not include it in the charge.[29]

Accordingly,
applying the test required by Almanza, we hold that Appellant suffered some
harm from the trial court’s erroneous definition of intoxication in the jury
charge.  We sustain his sole issue.

IV. 
Conclusion

Having
sustained Appellant’s sole issue, we reverse the trial court’s judgment and remand
this case to the trial court for a new trial.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
DAUPHINOT, MCCOY, and MEIER, JJ.

 

MCCOY,
J. concurs without opinion.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  July 28, 2011









[1]See Tex. R. App. P. 47.4.





[2]Alice
B. Toklas, The Alice B. Toklas Cook
Book 259–60 (Harper Perennial paperback. ed. 2010) (1954) (garnering notoriety for
including a recipe for brownies that included marijuana as an ingredient).





[3]257 S.W.3d 248, 256 (Tex.
Crim. App. 2008).





[4]See Tex. R. App. P.
38.1(f), 38.9; Pena
v. State, 191 S.W.3d 133, 138 (Tex. Crim. App. 2006); Leadon v. State,
332 S.W.3d 600, 613 n.3 (Tex. App.CHouston
[1st Dist.] 2010, no pet.); Ramirez v. State, 301 S.W.3d 410, 419 n.6
(Tex. App.CAustin
2009, no pet.); Ramsey v. State, 249 S.W.3d 568, 576 n.5 (Tex. App.CWaco 2008, no pet.); see
also Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex.
1989).





[5]884 S.W.2d 485, 491 (Tex.
Crim. App. 1994).





[6]Abdnor v. State,
871 S.W.2d 726, 731 (Tex. Crim. App. 1994); see also Sakil v. State, 287
S.W.3d 23, 25–26 (Tex. Crim. App. 2009).





[7]Abdnor, 871 S.W.2d
at 732.





[8]257 S.W.3d at 256.





[9]See id.





[10]Christian v. State, 286
S.W.3d 63, 66 (Tex. App.—Texarkana 2009, pet. ref’d) (footnote omitted).





[11]See Ake v.
Oklahoma, 470 U.S. 68, 77, 105 S. Ct. 1087, 1093 (1985); Aldrich v.
State, 296 S.W.3d 225, 233 (Tex. App.—Fort Worth 2009, pet. ref’d) (en
banc) (citing Ex parte Briggs, 187 S.W.3d 458, 466–67 (Tex. Crim. App.
2005), in which the court granted habeas relief on ineffective assistance of
counsel grounds because trial counsel failed to investigate or obtain experts
for economic reasons, not as trial strategy, and holding that Aldrich’s trial
counsel wrongly believed that he had no duty to complete any independent
investigation); see generally Mata v. State, 46 S.W.3d 902, 917
(Tex. Crim. App. 2001) (holding that the trial court abused its discretion by
admitting the State’s evidence of retrograde extrapolation).





[12]Tex. Penal Code Ann. §§
49.01(2), 49.04(a) (West 2011).





[13]Barbernell, 257
S.W.3d at 256.





[14]See, e.g., Panetti
v. Quarterman, 551 U.S. 930, 932, 127 S. Ct. 2842, 2846 (2007) (holding state
court failed to provide Panetti the procedures he was entitled to under the
Constitution with respect to his claim that he was incompetent to be executed;
notwithstanding his undisputed substantial threshold showing of insanity, the
state court on repeated occasions conveyed information to defense counsel that
turned out not to be true, provided at least one significant update to the
state without providing the same notice to Panetti, and failed to provide him
with an adequate opportunity to submit expert evidence in response to the
report filed by the court-appointed experts); Pope v. State, 207 S.W.3d
352, 360 n.28 (Tex. Crim. App. 2006), cert. denied, 549 U.S. 1350 (2007);
State v. Moff, 154 S.W.3d 599, 603 (Tex. Crim. App. 2004); Jaubert v.
State, 74 S.W.3d 1, 4–5 (Tex. Crim. App.) (Cochran, J., concurring) (“[T]he
letter of the law is not always a perfect reflection of the spirit of the
law, . . . [which] is to ensure that Texas criminal
proceedings are not a contest of clever gamesmanship or trial by ambush.  There
is very little formal pretrial discovery mandated in Texas criminal
proceedings, but our Rules of Evidence are drafted to ensure that Texas
criminal practitioners remain gentlemen and gentlewomen who do not spring
evidentiary surprises on their adversaries.”), cert. denied, 537 U.S.
1005 (2002).





[15]See Otto v. State,
273 S.W.3d 165, 170–71 (Tex. Crim. App. 2008) (holding that the jury charge may
not enlarge the offense alleged and authorize the jury to convict on a basis or
theory permitted by the jury charge but not alleged in the indictment); Reed
v. State, 117 S.W.3d 260, 265 (Tex. Crim. App. 2003); Abdnor, 871
S.W.2d at 738; Castillo v. State, 7 S.W.3d 253, 258–59 (Tex. App.—Austin
1999, pet. ref’d); see also Webb v. City of Dallas, 211 S.W.3d 808, 820
(Tex. App.—Dallas 2006, pet. denied).





[16]884 S.W.2d at 491.





[17]Kirsch v. State,
306 S.W.3d 738, 743 (Tex. Crim. App. 2010) (citations omitted) (emphasis
added).





[18]46 S.W.3d at 908–09.





[19]Id. at 909–10.





[20]Id. at 910.





[21]See Daubert v. Merrell
Dow Pharmaceuticals, 509 U.S. 579, 590, 593–94, 113 S. Ct. 2786, 2795, 2796–97
(1993); Kelly v. State, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).





[22]Tex. Code Crim. Proc.
Ann. art. 36.19 (West 2006); Abdnor, 871 S.W.2d at 731–32; Almanza v.
State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh=g); see also Barrios v.
State, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (AA claim of jury-charge error is reviewed using
the procedure set out in Almanza.@).





[23]Almanza, 686
S.W.2d at 171.





[24]Id.; see also
Ovalle v. State, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).





[25]See, e.g.,
Balentine v. State, 71 S.W.3d 763, 769 (Tex. Crim. App. 2002).





[26]See McClinton v. State,
121 S.W.3d 768, 769 (Tex. Crim. App. 2003) (Cochran, J., concurring).





[27]Kirsch, 306 S.W.3d
at 747 (citing Brown v. State, 122 S.W.3d 794, 799–800 (Tex. Crim. App.
2003), cert. denied, 541 U.S. 938 (2004)).





[28]See, e.g., Otto,
273 S.W.3d at 169–70.





[29]Griffin v. United
States, 502 U.S. 46, 60, 112 S. Ct. 466, 474 (1991); Payne v. State,
194 S.W.3d 689, 698 (Tex. App.—Houston [14th Dist.] 2006, pet. ref’d); see
also Guevara v. State, 191 S.W.3d 203, 206–08 (Tex. App.—San Antonio
2005, pet. ref’d).