**Affirmed as Modified and Opinion Filed March 4, 2022**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-19-00444-CR

**BRANDON GORDY, Appellant**
**V.**
**STATE OF TEXAS, Appellee**

**On Appeal from the 283rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F18-00751-T**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Partida-Kipness
Opinion by Justice Osborne

Brandon Gordy appeals the trial court's final judgment convicting him of

murder while committing or attempting to commit the felony offense of injury to a

child (felony murder). The jury found Gordy guilty, found that he used or exhibited

a deadly weapon during the commission of the offense, and assessed his punishment

at imprisonment for life. Gordy raises seven issues on appeal arguing: (1) the

evidence is insufficient to support his conviction because it fails to establish his

identity as the perpetrator; (2) the evidence is insufficient to support his conviction

because it fails to establish he committed or attempted to commit an act clearly

dangerous to human life; (3) the trial court erred when it overruled his objection to

the admission of extraneous-offense evidence; (4) the trial court erred when it denied his motions for mistrial; (5) the trial court erred when it overruled his objection to the jury charge because it included the lesser included offense of felony murder; (6) the trial court erred when it impliedly sustained the State's objection to his request that the jury charge include the mens rea of recklessly in the lesser included offense of injury to a child; and (7) the trial court erred when it impliedly sustained the State's objection to his request for the jury charge to include the defense of emergency medical care. In a cross-point, the State requests that this Court modify the trial court's judgment to accurately reflect the jury found Gordy used or exhibited a deadly weapon during the offense.

We conclude the evidence is sufficient and the trial court did not err except by signing a judgment with mistakes in it. The trial court's final judgment is affirmed as modified.

## I. FACTUAL AND PROCEDURAL BACKGROUND

D.D., a four-year-old boy, lived in an apartment with his mother, his three-year-old brother, Gordy who was his mother's boyfriend, Gordy and his mother's six-month-old daughter, and Gordy's four-year-old son. According to D.D.'s mother, the boys liked to play together but they were not rough.

On July 14, 2017, at around 6:30 a.m., D.D.'s mother checked on the children before she left for work. D.D. woke and she told him to go back to sleep. She did not see any marks or bruises on D.D. before she left for work that morning.

Later that day, at 1:58 p.m., the Dallas Fire Department responded to a 9-1-1 call concerning an unresponsive four-year-old male child. When they arrived at the apartment, they found two children between one and five years old sitting on the couch. Gordy was in the bathroom performing cardiopulmonary resuscitation (CPR) on D.D. There were no other adults in the apartment. D.D. had no pulse and was not breathing. He was taken to the hospital by ambulance. A neighbor took Gordy and the other children to the hospital. The neighbor stated that Gordy was devastated and frantic. While trying to resuscitate D.D., hospital staff observed bruising that became more and more evident while he was in the emergency room. Also, there was bright red blood at his rectum. Eventually, medical personnel discontinued their resuscitation efforts.

While in the pediatric emergency room, Gordy told the charge nurse that he left D.D. in the shower while he checked on the other children, heard a loud thud, and returned to find D.D. lying in the bathtub with part of his face in the water and part of him hanging over the side of the bathtub. Gordy told her that he performed a sternum rub and CPR as directed by the 9-1-1 operator, when he pressed on D.D.'s stomach some excrement came out, and D.D. vomited when he was administering CPR. According to the charge nurse, Gordy was distraught, frantic, hyperventilating, and screamed at D.D.'s bedside when resuscitation was discontinued.

Meanwhile, the police found D.D.'s mother, who was returning home from work, and brought her to the hospital. She arrived after the hospital staff had discontinued resuscitation efforts. When Gordy tried to grab D.D.'s mother, she spun around and said, "No, this is your fault. This is your fault. You did this." The police separated them to prevent a family violence situation from arising.

Police began investigating D.D.'s death. During the police investigation, Gordy's version of events did not change. During an autopsy of D.D.'s body, the forensic pathologist found: (1) bruises on his forehead, the bridge of his nose, under his left eye, over his left shoulder, under his neck, under his chin, multiple overlapping bruises on the back right-side of his scalp as well as to the lower part of his right lung, diaphragm, stomach, and bowel; (2) an abrasion below his lip; (3) discoloration, fresh bleeding, and little tears inside his mouth; (4) bleeding around the right eye; (5) a fractured collarbone and fractures to his "vertebral bodies"; (6) the right and left lobes of his liver were almost completely transected and an additional lobe was "pulled off." The abdominal cavity around D.D.'s liver was filled with about a third of his total blood volume. The forensic pathologist stated that the injuries looked acute or fresh, but she could not determine the exact time they were sustained. She stated that the majority of these injuries were not the type of injury that could be sustained from rough play, falling, or CPR and she believed that they were intentionally inflicted. She determined the cause of D.D.'s

—4—

death was "multiple blunt force injuries" and more specifically, blood loss from the liver tear.

Gordy was indicted for capital murder of an individual under ten years of age. The jury found him guilty of the lesser included offense of murder and assessed his punishment at imprisonment for life.

## II. SUFFICIENCY OF THE EVIDENCE

In issues one and two, Gordy argues the evidence is insufficient to support his conviction because it fails to establish: (1) his identity as the perpetrator; and (2) that he committed or attempted to commit an act clearly dangerous to human life. He contends the jury's verdict was based on "mere theorizing or guessing" because the evidence showed only that he was distraught and trying to save the victim's life, his statement remained unchanged, and D.D.'s injuries could not be timed to a period when he was in Gordy's exclusive care. He also maintains the evidence showed only that he gave D.D. a sternum rub and CPR at the direction of the 9-1-1 operator. Further, Gordy argues the evidence showed D.D. could have sustained his injuries through rough play with his siblings, an accidental fall, jumping from a cabinet, or clutter and sharp objects throughout the house. The State responds that a rational jury could have found Gordy committed an act clearly dangerous to human life.

### A. Standard of Review

Under the Due Process Clause, a criminal conviction must be based on legally sufficient evidence. *Harrell v. State*, 620 S.W.3d 910, 913 (Tex. Crim. App. 2021).

When reviewing the sufficiency of the evidence, an appellate court considers all of the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Harrell*, 620 S.W.3d at 913–14. Further, an appellate court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight assigned to their testimony. *See Jackson*, 443 U.S. at 319, 326; *Harrell*, 620 S.W.3d at 914. An appellate court will consider all evidence when reviewing the sufficiency of the evidence, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or defense. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).

### B. Applicable Law

Section 19.02 of the Texas Penal Code sets out the different manners and means of committing the offense of murder. TEX. PENAL CODE ANN. § 19.02. While not a distinct or separate offense, § 19.02(b)(3) is often referred to as the "felony murder" statute or rule and provides that a person commits murder if:

> [He] commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

PENAL § 19.02(b)(3); *see also Christian v. State*, 286 S.W.3d 63, 68 (Tex. App.— Texarkana 2009, pet. ref'd) (noting felony murder is not separate and distinct

–6–

offense).  Essentially, the State must prove the following: (1) an underlying felony; (2) an act clearly dangerous to human life; (3) the death of an individual; (4) causation (the dangerous act causes the death); and (5) a connection between the underlying felony and the dangerous act ("in the course of and in furtherance of . . . or in immediate flight from").  *Contreras v. State*, 312 S.W.3d 566, 583–84 (Tex. Crim. App. 2010).

The offense of "injury to a child" can qualify as an underlying felony in a felony murder prosecution.  *Id.* at 584.  Section 22.04(a)(1) of the Texas Penal Code states that "[a] person commits [the offense of injury to a child] if he intentionally, knowingly, recklessly, or with criminal negligence, by act . . . causes to a child . . . serious bodily injury."  PENAL § 22.04(a)(1).

Direct evidence of the elements of the offense, including the identity of the perpetrator and culpable mental state, is not required.  *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007).  The jury is permitted to make reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor.  *Id.* 14–15.  Circumstantial evidence alone may be sufficient to establish guilt.  *Id.* at 15.

Cases involving injury to or death of a child often depend on circumstantial evidence because there is rarely direct evidence of exactly how the injuries occurred.  *Mercado v. State*, No. 05-16-00152-CR, 2016 WL 7473906, at *7 (Tex. App.— Dallas Dec. 29, 2016, no pet.) (mem. op., not designated for publication); *Bearnth*

–7–

*v. State*, 361 S.W.3d 135, 140 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). If an adult defendant has sole access to a child when the child sustains the injuries, the evidence is sufficient to support a conviction for injury to a child or murder. *Cuadros–Fernandez v. State*, 316 S.W.3d 645, 654 (Tex. App.—Dallas 2009, no pet.).

### C.  Application of the Law to the Facts

Gordy argues the evidence is insufficient to prove his identity as the person who murdered D.D. The record shows that D.D.'s mother left the apartment before D.D. was injured and she did not observe any marks or bruises on D.D. before she left for work that morning. And she left D.D. and her other children in the exclusive care of Gordy for the 7–8 hours preceding the arrival of the Dallas Fire Department. As a result, the evidence shows that Gordy was the only adult present at the time D.D. was injured. Because Gordy was the sole adult with access to D.D. at the time D.D. sustained his injuries, the evidence is sufficient to support Gordy's identity as the offender. *See Cuadros–Fernandez*, 316 S.W.3d at 654 (concluding evidence sufficient to support conviction for injury to a child or murder if child dies where adult defendant had sole access to child when child sustained injury). Further, we note that the evidence shows that, although the pathologist testified that she could not provide an exact time for the injuries, she did state that they were "acute,"[1]

---

[1] The pathologist defined acute as meaning "up to 24 hours of [the] presentation of the symptoms."

"recent," or "fresh," approximately 12–36 hours old, caused by "multiple blunt force injuries" and more specifically, blood loss from the liver tear, and she "would not expect the child to live more than a few hours with [the blood loss from the liver tear]."

Also, Gordy maintains the evidence showed only that he was distraught and trying to save the victim's life, his statement remained unchanged, and D.D.'s injuries could not be timed to a period when he was in Gordy's exclusive care. However, the record also shows that the forensic pathologist testified in detail about the extent of D.D.'s injuries, the majority of D.D.'s injuries were not the type of injury that could be sustained from rough play, falling, or CPR, and she believed that D.D.'s injuries were intentionally inflicted, not accidental. In particular, she stated D.D.'s liver injury was the result of a direct blow to his abdomen. Further, although she could not provide an exact time for the injuries, she did state that they were acute or recent. Gordy's challenge to the sufficiency of the evidence relating to whether he committed or attempted to commit an act clearly dangerous to human life is actually an attack on the credibility and weight assigned to the evidence by the jury. We are required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight assigned to their testimony. *See Jackson*, 443 U.S. at 319, 326; *Harrell*, 620 S.W.3d at 914.

After reviewing the evidence, we conclude that a rational jury could have found the elements of the offense beyond a reasonable doubt. Accordingly, we conclude the evidence is sufficient to support Gordy's conviction for felony murder.

Issues one and two are decided against Gordy.

### III. EXTRANEOUS-OFFENSE EVIDENCE

In issue three, Gordy argues the trial court erred when it overruled his objection to the admission of extraneous-offense evidence through the testimony of the forensic pathologist and the autopsy photographs in violation of Texas Rules of Evidence 401, 403, and 404.[2] He contends that, to prove his identity and intent, the State offered circumstantial evidence of extraneous injuries to D.D. Gordy argues the State introduced this evidence to show that his account of events was inconsistent with D.D.'s injuries even though there were no common characteristics among D.D.'s extraneous injuries to constitute a signature. Gordy maintains that no specific intent to commit a felony can be gleaned from any of D.D.'s injuries and there was little testimony providing a temporal proximity of the various injuries. The State responds the forensic pathologist who performed the autopsy is entitled to testify about the manner of death, cause of death, and the number and types of injuries the victim sustained.

---

[2] Although Gordy generally argues that the testimony of the forensic pathologist and the autopsy photographs were admitted in violation of Rules 401, 403, and 404, his argument focuses on Rule 404(b). However, we liberally construe his argument to pertain to all three rules of evidence.

–10–

## A. Standard of Review

An appellate court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. *Id.* at 83. An appellate court will uphold a trial court's evidentiary ruling if it was reasonably supported by the evidence and correct on any theory of law applicable to the case. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). Further, an appellate court shall give deference to a trial court when it decides not to exclude extraneous-offense evidence and finds that the probative value of that evidence is not outweighed by the danger of unfair prejudice. *See Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

## B. Applicable Law

Relevant evidence is always admissible unless specifically prohibited. TEX. R. EVID. 402. Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. TEX. R. EVID. 401. The number and location of wounds inflicted are probative of a defendant's intent to kill and his mental state at the time of the offense. *See Motilla v. State*, 78 S.W.3d 352, 359 (Tex. Crim. App. 2002). Additionally, evidence of injury may be probative of the specific circumstances of the murder and the veracity of a defendant's statement to police. *See, e.g.*, *Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998). Generally,

–11–

a photograph is admissible if verbal testimony as to matters depicted in the photographs is also admissible. *Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997). Therefore, if verbal testimony is relevant, photographs of the same are also relevant. *Id.*

A trial court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. EVID. 403. When undertaking a Rule 403 analysis, a trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). Rule 403 favors admissibility and presumes relevant evidence is more probative than prejudicial. *Rayford v. State*, 125 S.W.3d 521, 529 (Tex. Crim. App. 2003).

In determining whether the danger of unfair prejudice substantially outweighs a photograph's probative value, a court may consider many factors. *Williams v.*

*State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009). These include: (1) the number of such photographs the proponent offers; (2) their gruesomeness; (3) their level of detail; (4) their size; (5) whether they are in color or black-and-white; (6) whether they are close-ups; (7) whether they depict a clothed versus a naked body; (8) the availability of other means of proof; and (9) other circumstances unique to the individual case. *Id.* Autopsy photographs are generally admissible unless they depict mutilation of the victim caused by the autopsy itself. *Id.*

Even when evidence is relevant, Texas Rule of Evidence 404(b) prohibits the admission of evidence of other crimes, wrongs, or acts unless it is relevant to prove some issue other than the defendant's criminal character. EVID. 404(b)(1). Such issues include the following: (1) motive; (2) opportunity; (3) intent; (4) preparation; (5) plan; (6) knowledge; (7) identity; and (8) absence of mistake or accident. EVID. 404(b). Evidence of other crimes, wrongs, or bad acts may also be admissible to rebut a defensive theory. *See Powell v. State*, 63 S.W.3d 435, 439 (Tex. Crim. App. 2001).

### C. Application of the Law to the Facts

The indictment charged Gordy with:

> [I]ntentionally and knowingly caus[ing] the death of [D.D.], an individual, hereinafter called deceased, by STRIKING DECEASED WITH AND AGAINST AN UNKNOWN OBJECT, THE EXACT NATURE AND DESCRIPTION OF WHICH ·IS UNKNOWN TO THE GRAND JURY, and the deceased was at the time of the offense under ten years of age.

(Emphasis in orig.)  During the trial, Gordy objected on the basis of Rules 401, 403, and 404(b) to any testimony by the forensic pathologist about "old injuries" to D.D. arguing they were extraneous offenses.  He also objected to the admission of the autopsy photographs based on his previous objections.  The State responded that the forensic pathologist's testimony was necessary to rebut Gordy's claim that D.D. fell in the bathtub and it was contextual.  The State also told the trial court, "I do want to remain clear that I am not going to go into any previous or prior injuries.  Only the ones that the [forensic pathologist], combined with what the mother says, are acute."  The trial court admitted the evidence which consisted of: (1) the forensic pathologist's testimony about the external and internal injuries she observed on D.D. during the autopsy and her determination as to the cause and means of D.D.'s death; and (2) the autopsy photographs.

First, Gordy argues the forensic pathologist's testimony and the autopsy photographs were not relevant under Rule 401.  The forensic pathologist was entitled to testify to the manner of death, cause of death, and the number and types of injuries D.D. sustained.  *See Long v. State*, 823 S.W.2d 259, 274, 275 (Tex. Crim. App. 1991).  And because the forensic pathologist's verbal testimony was relevant, the autopsy photographs of the same were also relevant.  *See Williams*, 958 S.W.2d at 195.

Accordingly, we conclude the forensic pathologist's testimony and the autopsy photographs were relevant to establish the identity of the victim, the manner

and means of death, and the force used, which are certainly facts that are of consequence to the determination of the alleged offense. *See* EVID. 401 (defining relevant evidence as any evidence that has any tendency to make a fact more or less probable than it would be without the evidence).

Second, Gordy argues the forensic pathologist's testimony and the autopsy photographs were more prejudicial than they were probative under Rule 403. He contends that this evidence "undeniably tilted the jury toward conviction." The forensic pathologist's testimony concerned the intentional nature of D.D.'s injuries, provided a medical explanation for his death, and established an approximate time as to when the injuries were inflicted. Also, the trial court admitted over Gordy's objection State's Exhibit Nos. 20–33 and 35, which are autopsy photographs depicting the injuries to the victim's body, his partially transected liver, and a medical manikin. They are displayed in the appellate record as black-and-white photographs that are approximately 8 inches x 10 inches in size. They do not show any mutilation of D.D.'s body caused by the autopsy itself. The majority of the photographs are closeups of D.D.'s face and unclothed upper torso showing the extent of the injuries he suffered and in State's Exhibit No. 31, D.D.'s head had been shaved to show the bruising to his scalp. Further, the autopsy photographs illustrated the forensic pathologist's testimony. We conclude the trial court did not abuse its discretion when it determined the probative value of the forensic pathologist's

testimony and the autopsy photographs was not outweighed by their prejudicial effect.

Third, Gordy argues the forensic pathologist's testimony and the autopsy photographs were impermissible extraneous-offense evidence under Rule 404(b). We note that Gordy refers only generally to the forensic pathologist's testimony and State's Exhibit Nos. 20–33 and 35, and he does not specify on appeal the specific injuries to D.D. that he believes were extraneous or "old injuries." Rather, he contends the evidence only shows D.D. was in his exclusive care the 7–8 hours preceding the 9-1-1 call and the forensic pathologist stated the injuries could have been 12–36 hours old, so D.D.'s injuries constitute extraneous-offense evidence.

An extraneous offense is any act of misconduct, whether prosecuted or not, that is not shown in the charging papers. *See Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003); *Rankin v. State*, 953 S.W.2d 740, 741 (Tex. Crim. App. 1996). It is an offense beyond or unrelated to the offense for which a defendant is on trial. *Manning*, 114 S.W.3d at 926–27; *see also Extraneous Offense*, BLACK'S LAW DICTIONARY (11th ed. 2019). In this case, the indictment alleged that Gordy struck D.D. with or against an unknown object causing his death. The forensic pathologist testified that the injuries she was describing were "acute," "recent," or "fresh," approximately 12–36 hours old, and caused by "blunt force" or "force." She also stated that in order to transect the liver it would take "much more directed force." She determined that the cause of D.D.'s death was "multiple blunt force

–16–

injuries" and more specifically, blood loss from the liver tear. We do not see how the forensic pathologist's testimony and the accompanying autopsy photographs relate to extraneous acts or injuries—rather, these are injuries related to the offense for which Gordy was charged and on trial. As a result, we cannot conclude that the trial court's decision to overrule Gordy's Rule 404(b) objection to this evidence falls outside the zone of reasonable disagreement.

Finally, with respect to the external bruising and rectal bleeding injuries, before the forensic pathologist testified, the charge nurse testified that she saw bruising on D.D.'s body and that more bruising seemed to be appearing on his body while they were trying to resuscitate him. She also stated that there was bright red blood at his rectum.[3] Further, State's Exhibits Nos. 4 and 5, which were admitted into evidence without objection, depict close-ups of D.D.'s face after medical personnel discontinued resuscitation efforts. The charge nurse also described where the bruising to his "left side" and along his shoulder could be seen in those photos. In addition, D.D.'s mother testified without objection that the photograph in State's Exhibit No. 20 showed bruises on D.D.'s face and those bruises were not present when she left for work on the day of his death. She also stated that she did not "do anything to cause the bruises on [D.D.'s] body." With respect to State's Exhibit Nos. 21–24, 27, and 29–30, they depict external bruising to D.D.'s body. It is well

---

[3] Gordy did object to a portion of the charge nurse's testimony under Texas Rules of Evidence 702 and 705 on the basis that she was a fact witness, not an expert witness, but he does not complain on appeal about the overruling of this objection.

settled that erroneously admitted evidence will not result in reversal if other evidence that proves the same fact was admitted without objection. *See Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010).

We conclude the trial court did not err when it overruled Gordy's Rule 401, 403, and 404(b) objections to the admission of the forensic pathologist's testimony and the autopsy photographs.

Issue three is decided against Gordy.

## IV. MOTION FOR MISTRIAL

In issue four, Gordy argues the trial court erred when it denied his motions for mistrial after the charge nurse and Detective Rico Harris testified to "extraneous offenses" by repeatedly referring to an ongoing Texas Department of Family and Protective Services (CPS) investigation, which was the subject of a motion in limine. He contends that although the trial court sustained his objections and instructed the jury to disregard, the errors were incurable. The State responds that the trial court's limiting instructions were an adequate remedy.

### A. Standard of Review

An appellate court reviews a trial court's ruling on a motion for mistrial for an abuse of discretion. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). A trial court abuses its discretion if its decision is outside the zone of reasonable disagreement. *Id.* An appellate court does not substitute its judgment for that of the trial court but decides whether the trial court's decision was arbitrary or

–18–

unreasonable. *See Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). When reviewing the denial of a motion for mistrial, an appellate court views the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the trial court at the time of the ruling. *See Ocon*, 284 S.W.3d at 884; *Webb*, 232 S.W.3d at 112.

## B. Applicable Law

Although not expressly provided for in the Texas Code of Criminal Procedure, a mistrial is an appropriate remedy in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *Ocon*, 284 S.W.3d at 884 & n.3. A mistrial halts trial proceedings when the error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Id.* at 884; *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App.1999). Whether an error requires a mistrial must be determined by the particular facts of the case. *Ocon*, 284 S.W.3d at 884. Because it is a drastic remedy, a mistrial should be granted only when residual prejudice remains after less drastic alternatives have been explored. *Id.* at 884–85. Instructions to the jury are generally considered sufficient to cure improprieties that occur during trial, and appellate courts generally presume that a jury will follow the trial judge's instructions. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009); *see also Taylor v. State*, No. 02-16-00299-CR, 2017 WL 5894923, at *3 (Tex. App.—Fort Worth Nov. 30, 2017, pet. ref'd) (mem. op., not designated for publication) (concluding trial court did not err in denying motion for mistrial because

mere mention of CPS "reason to believe" finding is not grounds for mistrial and nothing in record suggests jury failed to follow trial court's instruction to disregard).

## C. Application of the Law to the Facts

Gordy does not argue that the State asked improper questions. Rather, he contends that three statements by two witnesses that mentioned CPS warranted a mistrial because those statements suggested he engaged in an ongoing pattern of abuse and increased the likelihood that the jury would attribute to him all of the injuries to which the forensic pathologist testified.[4] Specifically, Gordy complains about the following testimony by the pediatric charge nurse, Diana Flurry-Wilemon:

| | |
|---|---|
| State: | At some point, are detectives called? |
| Flurry-Wilemon: | Yes, ma'am. |
| State: | When does that happen? |
| Flurry-Wilemon: | That happens also immediately after pronouncement. We have several calls that we make. We make them to the medical examiner and let them know that y'all need to come. We call transplant alliance for any patient that dies in the hospital. **Anytime there's a child death, we call CPS, we call—the child abuse unit generally is called out as well.** |
| Defense Counsel: | Judge, again, I object to the witness' nonresponsive answer. I object to specifically a mention that was ruled on by a motion in limine prior to trial, that that answer violates that motion in limine. |

---

[4] As we previously determined, the forensic pathologist testified that the injuries she was describing were "acute," "recent," or "fresh" and approximately 12–36 hours old. Contrary to Gordy's assertion, she did not testify about any old injuries.

–20–

| | |
|---|---|
| Court: | Okay. Let me just advise the witness, just be sure that you are answering specifically the questions that are being asked. Okay? |
| Defense Counsel: | Judge, is my objection overruled? |
| Court: | Yes. |
| Defense Counsel: | Thank you. |
| State: | So the child is there and covered. What happens as far as the medical examiner coming out or the detectives coming out? Tell us what happened in this case. |
| Flurry-Wilemon: | In this case, the initial response was from a detective from the child abuse unit from Dallas Police Department. **When I—I also got a very quick response from the Department of Family Services, because there was a CPS case that was ongoing.** |
| Defense Counsel: | Hold on. Let me lodge my objection. Judge, I object that the witness' answer violates a motion in limine. |
| Court: | Sustained. |
| Defense Counsel: | I would ask the jury to be instructed to disregard the answer by the witness. |
| Court: | Let me advise the jurors to please disregard the last statement that you just heard from the witness. |
| Defense Counsel: | And we would request a mistrial, Your Honor. |
| Court: | Mistrial is denied. |

(Emphasis added.). Also, he complains about the following testimony by Detective Rico Harris:

| | |
|---|---|
| State: | Do you know how police were notified? |

| | |
|---|---|
| Det. Harris: | I believe there were—from my understanding, there probably was some discussion at the hospital that something else might have happened. |
| State: | Now, you weren't at the hospital— |
| Det. Harris: | Yeah. |
| State: | —so you wouldn't know the discussions. But the hospital—or someone from the hospital notified— |
| Det. Harris: | Yes. **They either notified CPS 3:56 PM directly or they might have called our office directly.** |
| State: | Either way, at that— |
| Defense Counsel: | Judge, I will object to the nonresponsive comment by the witness. |
| Court: | Sustained. |
| Defense Counsel: | I will object that it's a violation of our motion in limine. |
| Court: | Sustained. |
| Defense Counsel: | I will ask that the jury be instructed to disregard the comment by the witness. |
| Court: | Jury, please disregard the last comment. |
| Defense Counsel: | I would move for a mistrial. |
| Court: | Mistrial is denied. |

(Emphasis added.)

Two of the complained of statements—one made by the pediatric charge nurse and the other by the detective—merely reference that the hospital contacted CPS. Further, the pediatric charge nurse clarified that the hospital contacts CPS anytime a child dies. The third complained of statement—made by the pediatric charge

nurse—did reference that there was an ongoing CPS investigation. However, she did not provide any further detail as to whom they were investigating, which child in the family that investigation pertained to, or the concerns forming the basis of that investigation. After sustaining two of Gordy's objections to these references to CPS, the trial court made two instructions to disregard the references to the CPS. Further, nothing in the record suggests that the jury failed to follow the trial court's instructions to disregard. Accordingly, we conclude the trial court did not err when it denied Gordy's motions for mistrial.

Issue four is decided against Gordy.

## V. JURY CHARGE ERROR

In issues five, six, and seven, Gordy argues the trial court erred when it overruled his objection to the jury charge because it included the lesser included offense of felony murder and impliedly sustained the State's objection to his requests that the jury charge include the mens rea of recklessly for the lesser included offense of injury to a child and the defense of emergency medical care.

### A. Standard of Review

An appellate court reviews the trial court's decision to include a lesser included offense in the jury charge for an abuse of discretion. *See Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004) (concluding trial court did not abuse discretion when no evidence to support inclusion of lesser included offence). However, when reviewing a trial court's decision to exclude or include a defensive

–23–

issue in its charge, an appellate court views the evidence in the light most favorable to the defendant's requested submission. *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020).

### B. Lesser Included Offense of Felony Murder

In issue five, Gordy argues the trial court erred when it overruled his objection to the inclusion of the lesser included offense of felony murder in the jury charge because: (1) a § 19.02(b)(3) felony murder is not a lesser included offense of capital murder as the statute clearly states that only the culpable mental state of intentionally or knowingly for murder under § 19.02(a)(1) is included; and (2) allowing a lesser included offense for felony murder, which has a different culpable mental state, "expands the offense" charged in the indictment. The State responds that felony murder is a lesser included offense of capital murder so Gordy had sufficient notice that he could be convicted of that offense.

### 1. Applicable Law

If there is sufficient evidence to support a conviction on a lesser included offense, a trial court may submit the lesser included-offense instruction, even though the defendant did not request the charge and even over the defendant's objection. *Castro v. State*, No. 05-19-00427-CR, 2020 WL 2847288, at *3 (Tex. App.—Dallas June 2, 2020, pet. ref'd) (mem. op., not designated for publication).

Section 19.03(a) of the Texas Penal Code describes offenses which—together with the offense of murder as defined under section 19.02(b)(1)—constitute capital

murder, including when "the person murders an individual under 10 years of age." PENAL §§ 19.02(b), 19.03(a)(8). If a jury does not find beyond a reasonable doubt that a defendant is guilty of capital murder, he may still be convicted of murder or any other lesser included offense. *Id.* § 19.03(c).

Section 19.02 of the Texas Penal Code sets out the different manners and means of committing the offense of murder. PENAL § 19.02. The three methods of committing murder set forth in the § 19.02 are not distinct and separate offenses. *Smith v. State*, 436 S.W.3d 353, 378 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd); *Christian*, 286 S.W.3d at 68; *Gandy v. State*, 222 S.W.3d 525, 529 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). Nevertheless, as previously noted, § 19.02(b)(3) is often referred to as the "felony murder" statute or rule. *See* PENAL § 19.02(b)(3); *Christian*, 286 S.W.3d at 68 (noting felony murder is not separate and distinct offense). In certain circumstances, felony murder can be a lesser included offense of capital murder. *See Threadgill*, 146 S.W.3d at 665.

### 2. Application of the Law to the Facts

During the charge conference, Gordy objected to the inclusion of felony murder as a lesser included offense, arguing that the culpable mental state for capital murder under § 19.03(a)(8) does not include the culpable mental state for felony murder under § 19.02(b)(3) and that the inclusion of felony murder in the charge improperly expanded the offense charged in the indictment. The charge provided the following definition for murder: "A person commits the offense of murder if he

intentionally or knowingly causes the death of an individual." And it provided the following definition for capital murder: "A person commits the offense of capital murder if he commits murder, as defined above, and the person murders an individual under ten years of age." In addition, the jury charge included another definition of murder, which related to the lesser included offense of felony murder:

> A person commits the offense of felony murder if he commits or attempts to commit a felony, other than manslaughter, and in the course of and in the furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

Based on these definitions and their corresponding application paragraphs, Gordy complains that the jury was permitted to consider that he could have committed capital murder by committing an act clearly dangerous to human life in the course of committing a felony, rather than only by intentionally or knowingly causing the death of D.D. Gordy appears to argue that "felony murder" is a separate and distinct offense from "murder."

Although § 19.02(b)(3) is often referred to as the "felony murder" statute or rule, it is one of three methods of committing "murder" under § 19.02; it is not a separate and distinct offense. *See Christian*, 286 S.W.3d at 68. Further, § 19.03(c) makes clear that "murder" is a lesser included offense of capital murder. PENAL § 19.03(c); *see Fuentes v. State*, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999) ("The elements of felony murder [under Section 19.02(b)(3)] are included within the proof

–26–

necessary for capital murder committed in the course of robbery [that is, § 19.03(a)(2)].").

To the extent that Gordy argues the inclusion of the lesser included offense of felony murder "expands the offense" of capital murder charged in the indictment, we disagree. Gordy was indicted for intentionally or knowingly causing D.D.'s death by striking D.D. with and against an unknown object. The jury charge contained the lesser included offense of felony murder by committing or attempting to commit the felony offense of injury to a child by intentionally or knowingly causing serious bodily injury to D.D. and while in the course of or in furtherance of that offense did commit an act clearly dangerous to human life. Serious bodily injury means "bodily injury that creates a substantial risk of death or that causes death." PENAL § 1.07(a)(46). To prove Gordy intentionally or knowingly caused D.D.'s death, the State necessarily had to prove Gordy intentionally or knowingly caused serious bodily injury to D.D. by committing an act clearly dangerous to human life.

We note that we considered a similar argument to Gordy's in *Polk v. State*, No. 05-03-01244-CR, 2004 WL 2802505 (Tex. App.—Dallas Dec. 1, 2004, no pet.) (not designated for publication). In *Polk*, the appellant was indicted for capital murder and convicted of the lesser included offense of murder under § 19.02(b)(2). *Id.* at *1. On appeal, the appellant argued that murder under § 19.02(b)(2) is not a lesser included offense of capital murder and that the jury charge enlarged the offense charged in the indictment. *Id.* This Court concluded the trial court did not

–27–

err in submitting the charge because murder under § 19.02(b)(2) is a lesser included offense of capital murder. *Id.*; *see also* PENAL § 19.03(c). Also, this Court concluded that to prove the appellant intentionally and knowingly caused the victim's death under § 19.03, the State necessarily had to prove the defendant caused seriously bodily injury under § 19.02(b)(2), so the appellant's conviction on the basis that he intended to cause the victim serious bodily injury and committed an act clearly dangerous to human life causing the victim's death was not an enlargement of the offense of capital murder. *Id.* at *2.

We conclude the trial court did not err when, in its discretion, it included the lesser included offense of felony murder in the jury charge. *See Polk*, 2004 WL 2802505, at *1–2.

Issue five is decided against Gordy.

### C. Lesser Included Offense of Injury to a Child

In issue six, Gordy argues the trial court erred when it impliedly sustained the State's objection to his request that the jury charge include the mens rea of reckless[5] in the lesser included offense of injury to a child.[6] He maintains the only acts attributable to him are a sternum rub and CPR. And the evidence showed that he

---

[5] Gordy does not allege the trial court erred when it impliedly sustained the State's objection to the inclusion of the mens rea of negligently for the lesser included offense of injury to a child.

[6] Gordy also claims in a single statement that "the trial court's denial of [his] request thereby violated his rights under the Sixth, Eighth, and 14th Amendments to the federal constitution and article I, sections 10 and 19 of the Texas Constitution." However, he provides no case law or further argument in support of this statement, so we do not address it.

was distressed. As a result, Gordy contends he could not have been aware that his alleged actions would be the direct cause of D.D.'s death. Further, Gordy argues he was harmed by the trial court's error because a mens rea of recklessly would have lowered the offense and punishment range to that of a second degree felony. The State responds that there is not a scintilla of evidence to support that Gordy recklessly caused the serious bodily injuries that resulted in D.D.'s death. Assuming without deciding the trial court erred, we consider whether that error was harmful error.

### 1. Applicable Law

When presented with an argument that a trial court committed jury charge error, the reviewing court must conduct a two-step inquiry: (1) Did an error occur?; and (2) If so, did it cause harm that rises to the level of reversible error? *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). The degree of harm necessary for reversal depends on whether the defendant preserved the error by objection. *Id.* If a defendant preserves error, then he only has to show "some harm" to his rights. *Id.* If he fails to object, he must demonstrate "egregious harm." *Id.*

An offense is a lesser included offense if: (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission; (3) it differs from the offense charged only in the respect

that a less culpable mental state suffices to establish its commission; or (4) it consists of an attempt to commit the offense charged or an otherwise included offense. TEX. CODE CRIM. PROC. ANN. art. 37.09. When error occurs in a jury instruction, not from the failure to include a lesser included offense but from a defect in the lesser included instruction that the trial court did submit, and the jury finds the defendant guilty of the greater offense, the verdict nullifies any possible harm from the defective instruction on the lesser offense. *Saunders v. State*, 913 S.W.2d 564, 569 (Tex. Crim. App. 1995); *see also Watson v. State*, No. 05-16-00140-CR, 2017 WL 6506313, at *2 (Tex. App.—Dallas Dec. 20, 2017, no pet.) (mem. op., not designated for publication) (discussing egregious harm).

## 2. Application of the Law to the Facts

During the charge conference, Gordy requested the inclusion of the lesser included offense of injury to a child under the intentionally, knowingly, recklessly, or negligently mental states. The State objected to the inclusion of the recklessly and negligently mental states. Although the trial court did not expressly sustain the State's objection, the jury charge provided the following definition of injury to a child: "A person commits injury to a child if he intentionally or knowingly by act causes serious bodily injury to a child 14 years of age or younger." And the application paragraph stated:

> Now, if you unanimously find from the evidence beyond a reasonable doubt that . . . Gordy, did then and there, intentionally or knowingly cause serious bodily injury to [D.D.], a child 14 years of age or younger . . . by striking [D.D.] with or against an unknown object, the

exact nature and description of which is unknown to the Grand Jury, then you will find [Gordy] guilty of injury to a child serious bodily injury, as included in the indictment.

Here, the claimed jury-charge error is a defect in the definition and application paragraph of the lesser included offense of injury to a child. But Gordy was convicted of the greater offense of felony murder. Accordingly, we conclude that, even if the trial court erred when it impliedly sustained the State's objection to the inclusion of the mens rea of recklessly in the lesser included offense of injury to a child, Gordy was not harmed by that error. *See Saunders*, 913 S.W.2d at 569.

Issue seven is decided against Gordy.

## D. Defense of Emergency Medical Care

In issue seven, Gordy argues the trial court erred when it impliedly sustained the State's objection to his request for the jury charge to include the defense of emergency medical care under § 22.04(k)(2) of the Texas Penal Code. The State responds that the trial court did not err when it sustained the State's objection to the inclusion of that defense because Gordy never admitted any act that caused D.D.'s injury.

### 1. Applicable Law

Regardless of the strength or credibility of the evidence, a defendant is entitled to an instruction on any defensive issue that is raised by the evidence. *Jordan*, 593 S.W.3d at 343. A defensive issue is raised by the evidence if there is sufficient evidence to support a rational jury finding as to each element of the defense. *Id.*

Section 22.04(k) of the Texas Penal Code provides that it is a defense to prosecution for the offense of injury to a child in § 22.04 that the act or omission consisted of emergency medical care administered in good faith and with reasonable care by a person not licensed in the healing arts. PENAL § 22.04(k)(2). The defense found in subsection (k)(2), concerning emergency medical care administered in good faith, is commonly referred to as the "Good Samaritan" defense. *See Shaw v. State*, 243 S.W.3d 647, 658–59 (Tex. Crim. App. 2007). It is a defense of confession and avoidance. *See id.* at 659. Confession-and-avoidance defenses do not negate any element of an offense, including intent; instead, they excuse what would otherwise constitute criminal conduct. *Id.* The emergency medical care defense deals with justifying otherwise-harmful conduct toward a child on the grounds that the conduct was in the best medical interest of the child. *Cornet v. State*, 359 S.W.3d 217, 225 (Tex. Crim. App. 2012).

With confession-and-avoidance defenses, a defensive instruction is appropriate only when the defendant's defensive evidence essentially admits to every element of the offense including the culpable mental state but interposes the justification to excuse the otherwise criminal conduct. *Shaw*, 243 S.W.3d at 659; *see Juarez v. State*, 308 S.W.3d 398, 401–03 (Tex. Crim. App. 2010) (discussing confession-and-avoidance doctrine with respect to affirmative defenses of necessity, self-defense, and emergency medical care). The doctrine requires a defendant to first admit that he engaged in the proscribed conduct by admitting all elements of

–32–

the underlying offense, then claim that his commission of the offense is justified because of other facts. *See Shaw*, 243 S.W.3d at 659. If the defensive evidence does no more than attempt to negate an element of the offense, a defendant is not entitled to a defensive instruction on any defense that is subject to the doctrine of confession and avoidance. *Id.*

## 2. Application of the Law to the Facts

During the charge conference, Gordy requested the inclusion of the defense of emergency medical care. The State objected. Although the trial court did not expressly sustain the State's objection, the jury charge did not include the emergency medical care defense.

Section 22.04(a)(1) of the Texas Penal Code states that "[a] person commits [the offense of injury to a child] if he intentionally, knowingly, recklessly, or with criminal negligence by act . . . causes to a child . . . serious bodily injury." PENAL § 22.04(a)(1). The forensic pathologist testified the cause of D.D.'s death was "multiple blunt force injuries" and, more specifically, blood loss from the liver tear. She also stated that D.D.'s injuries were not the type of injury that could be sustained from rough play, falling, or CPR and the tear to D.D.'s liver was the result of a direct blow to his abdomen. Further, Gordy did not admit to the elements of the offense of injury to a child or any act that caused the fatal injuries to D.D. and then present the emergency medical care defense. Rather, Gordy had two defensive theories at trial: (1) D.D.'s injuries occurred when he fell in the tub and Gordy administered

CPR; and (2) given the time frame provided by the forensic pathologist as to when D.D.'s injuries were sustained, those injuries occurred before D.D. was in Gordy's care. Accordingly, we conclude the trial court did not err when it impliedly sustained the State's objection to Gordy's request for the confession-and-avoidance defense of emergency medical care because it had no application under Gordy's defensive theories and the evidence.

Issue seven is decided against Gordy.

## VI. MODIFICATION OF THE JUDGMENT

In a cross point, the State requests that this Court modify the trial court's judgment to accurately reflect the jury found Gordy used or exhibited a deadly weapon during the offense. Further, although neither party raises the issue, we observe that the final judgment incorrectly states Gordy was convicted of capital murder of a child under ten years of age, lists the statute for the offense as "19.03 A 8 Penal Code," and states the degree of the offense as "Capital Offense."

The jury charge shows that the jury did not find Gordy guilty of capital murder. Rather, it found him guilty of the lesser included offense of felony murder. The statute for the offense of capital murder is Texas Penal Code § 19.03 while the statute for felony murder is § 19.02(b)(3). *Compare* PENAL § 19.02 (murder) *with* PENAL § 19.03 (capital murder). Further, felony murder is a first-degree felony, not a capital felony. *Compare* PENAL § 19.02(c) (except as provided under subsection (d), an offense under this section is a first-degree felony) *with* PENAL § 19.03(b)

(offense of capital murder is capital felony). Also, the jury answered "yes" to the special question on whether he used or exhibited a deadly weapon during the commission of the offense.

An appellate court has the authority to modify an incorrect judgment to make the record speak the truth when it has the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd) (en banc). We conclude the trial court's final judgment should be modified as follows:

(1) "Offense for which Defendant Convicted: Capitol [sic] Murder Child Under/10 Years" is modified to read "Offense for which Defendant Convicted: Felony Murder";

(2) "Statute for Offense: 19.03 A 8 Penal Code" is modified to read "Statute for Offense: Penal Code § 19.02(b)(3)";

(3) "Degree of Offense: Capital Felony" is modified to read "Degree of Offense: 1st Degree Felony"; and

(4) "Findings on Deadly Weapon: N/A" is modified to read "Findings on Deadly Weapon: Yes."

*See* TEX. R. APP. P. 43.2(b); *Bigley*, 865 S.W.2d at 27–28; *Asberry*, 813 S.W.2d at 529–30. As a criminal appeal, this case involves the restriction of a person's liberty and is a matter of public concern. *See Shumate v State*, No. 05-20-00197-CR, 2021 WL 4260768, at *3 (Tex. App.—Dallas Sept. 20, 2021, no pet.). These are not trivial matters and it is concerning that appellate counsel failed to alert this Court to many of the errors in the judgment. Although errors occur, the number and nature of the unaddressed errors in this judgment is concerning. *See id.*

–35–

The State's cross point is decided in its favor.

## VII. CONCLUSION

The evidence is sufficient to support Gordy's conviction for felony murder and the trial court did not err except by signing a judgment with mistakes in it.

As modified, the trial court's final judgment is affirmed.

The trial court is directed to prepare a corrected judgment that reflects the modifications made in this Court's opinion and judgment in this case. *See Shumate*, 2021 WL 426072.

/Leslie Osborne//
LESLIE OSBORNE
190444f.u05                                           JUSTICE

Do Not Publish
TEX. R. APP. P. 47



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

BRANDON GORDY, Appellant

No. 05-19-00444-CR V.

STATE OF TEXAS, Appellee

On Appeal from the 283rd Judicial District Court, Dallas County, Texas Trial Court Cause No. F18-00751-T. Opinion delivered by Justice Osborne. Justices Schenck and Partida-Kipness participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

(1) "Offense for which Defendant Convicted: Capitol [sic] Murder Child Under/10 Years" is modified to read "Offense for which Defendant Convicted: Felony Murder";

(2) "Statute for Offense: 19.03 A 8 Penal Code" is modified to read "Statute for Offense: Penal Code § 19.02(b)(3)";

(3) "Degree of Offense: Capital Felony" is modified to read "Degree of Offense: 1st Degree Felony"; and

(4) "Findings on Deadly Weapon: N/A" is modified to read "Findings on Deadly Weapon: Yes."

As **REFORMED**, the judgment is **AFFIRMED**.

We **DIRECT** the trial court to prepare a corrected judgment that reflects this modification.

Judgment entered this 4th day of March, 2022.